[No. 11598. Department Two. February 14, 1914.]

ROBERT HOFFMAN, *Respondent*, v. I. R. WATKINS, *Appellant*.[1]

PHYSICIANS AND SURGEONS—MALPRACTICE — EVIDENCE — EMPLOYMENT BY THIRD PERSON—RELEVANCY. In an action for malpractice, it is error to admit evidence that the defendant was under contract with plaintiff's employer to treat employees upon the payment of monthly hospital dues, where it was outside the issues; and the error is prejudicial where counsel persisted in this line of evidence, over objections, and a purpose to prejudice the minds of the jury plainly appears from the form of the questions, indicating that defendant neglected the case for want of additional compensation; especially where the closely contested issue was as to whether he had given a correct diagnosis.

TRIAL—INSTRUCTIONS—ISSUES. Where there is a mass of conflicting evidence, much of it irrelevant, it is error for the court, upon request, to refuse to instruct the jury as to the issues in the case.

PHYSICIANS AND SURGEONS—MALPRACTICE—NEGLIGENCE—PRESUMPTIONS—INSTRUCTIONS. In an action for malpractice, it is error to refuse to instruct that negligence cannot be inferred from the failure to effect a cure, and that the condition subsequent to treatment does not of itself establish negligence.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered March 20, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for malpractice. Reversed.

*J. B. Bridges* and *John C. Hogan*, for appellant.

*A. E. Cross* and *Hugo Metzler*, for respondent.

MORRIS, J.—Respondent sought in this action to recover damages against appellant, a physician, for alleged malpractice in the treatment of an injury to one of respondent's

[1]Reported in 138 Pac. 664.

shoulders.  The complaint stated a cause of action in tort, the allegations being, that respondent carelessly and negligently treated the shoulder and carelessly and negligently failed to properly examine the shoulder and ascertain its true condition; that appellant improperly diagnosed respondent's injury as a sprain and treated it accordingly, when, as a matter of fact, the shoulder was dislocated; and that, because of appellant's careless and negligent diagnosis and treatment and his failure to use ordinary care and skill, respondent was obliged to seek other medical aid, and was finally compelled to undergo an operation to have his shoulder properly reset, which operation and the attendant loss of time, expense, suffering, and permanent partial disability might have been avoided had appellant used ordinary care and skill in his diagnosis and treatment of the injured shoulder while respondent was under his care.  The trial resulted in judgment for respondent in the sum of $5,350, the full amount demanded, from which this appeal is taken.

We shall not attempt to review all the errors claimed by appellant.  Having found sufficient cause for awarding a new trial, it would be useless to discuss other assignments.  The first assignment is based on the improper admission of testimony to the effect that, at the time of his injury, respondent was in the employ of the Slade Lumber Company and paying one dollar per month hospital dues; that appellant was under contract with the lumber company to treat its employees requiring either medical or surgical aid, and that notices had been posted by the lumber company on its premises notifying all employees of the charge for hospital fees, and that whenever medical treatment was desired respondent should be consulted; and other testimony based on these facts.

No mention of these facts was made in any pleadings, and the evidence was clearly irrelevant.  It was not necessary to establish a contractual relation between appellant and respondent; for it is clear that, whether the relation was that of physician and patient alone, or whether the services of appel-

lant were engaged because of his contract with the lumber company, his duty to respondent would have been the same. We are not prepared to say that, simply because evidence of these irrelevant facts was admitted over objection, we would reach a conclusion that the error was so prejudicial as to demand a new trial, a different situation is presented. Page after page of this record is taken up with testimony of this character over the objection of appellant. The respondent, the appellant, and the officials of the lumber company were all called to testify to it, until it is apparent counsel for respondent had some purpose in mind in persisting in taking advantage of the court's favorable ruling in getting these facts before the jury. That purpose could only be to prejudice the jury outside of the issue in favor of the respondent's right of recovery, or against the appellant; it is immaterial which. The respondent was entitled to submit to the jury every fact within the issue, whatever its purpose was, but he was not entitled to go outside of the issue and introduce facts not issuable, either to strengthen his own case or weaken his adversary's. When litigants select the law and the courts to determine their differences, they must choose a triable issue, and having chosen that issue, no party can have a fair and impartial trial upon that issue when other irrelevant issues are persistently and extensively gone into. Every fact submitted to the jury has greater or less weight in reaching a conclusion upon the ultimate fact, and because of this each litigant is entitled to have the ultimate fact determined upon evidence that is relevant to that fact and the issue as framed by the pleadings, without having the ultimate facts strengthened to the advantage of one party and weakened to the prejudice of the other by the introduction of irrelevant and immaterial matter.

Especial reason is found for insisting upon such a rule in this case, where the record discloses that respondent submitted himself to the treatment of other physicians, and the jury must determine as between these different physicians

which one was responsible for the injury complained of.
When respondent was first injured, he called in Dr. Riley,
who made the same diagnosis and advised the same treatment
as did appellant.   Then appellant was called.   Then a return
to Dr. Riley.   Then respondent sought the services of Dr.
Randolph and Dr. Austin, who made the first diagnosis of a
dislocation and who placed respondent under an anaesthetic
and for an hour or more manipulated the arm and shoulder
with much force in the effort to reduce the dislocation, and
being unsuccessful, subsequently cut into the shoulder and
reduced the fracture then found.   Each of these doctors, by
his testimony, sought to establish the correctness of his own
diagnosis and treatment; Dr. Riley and appellant contending
that the primary injury was only a sprain, and that Dr. Ran-
dolph and Dr. Austin dislocated the shoulder during their
manipulation of it, and that the present condition of respond-
ent's arm was due to such a dislocation with a subsequent
faulty operation; while Dr. Randolph and Dr. Austin as
strenuously contended the primary injury was a dislocation,
and that their treatment and operation was the application
of the best surgical skill to the existing conditions.   It will
thus be seen that the question to be determined by the jury,
as between these different physicians, was not an easy one, and
while the jurors were entitled to all the aid that could be
given them, it clouded and befogged the true issue to submit
evidence of this irrelevant and immaterial relation.   The pur-
pose of counsel for respondent in putting in this testimony
is apparent from the form of some of the questions asked re-
spondent on cross-examination, as follows:

"As a matter of fact, this man [plaintiff] is a contract
patient, isn't he?  .   .   .   And he is and was what is known
as a contract patient; isn't that true?  .   .   .   A dollar a
month man, and you have taken a great deal of contract work
in Aberdeen and that at the time he was injured?  .   .   .   And
during these seven or eight years in the hospital you were
taking or doing that kind of contract work, were you not
largely?  .   .   .   And during the time that he [plaintiff] was

injured together with those contract patients, you had a private practice? . . . And this money is paid by these men each month and you get the money and whether he is hurt or sick? . . . So when you came to see that man that morning, when you were called rather to see that man, you knew you would not get any more cash out of him except what you had already collected? . . . You knew that fact at that time? . . . That was a fact within your knowledge? . . . And at this particular time he was seeing you at your office in town you were receiving patients other than the contract patients? . . . And you were treating people who were not paying you a dollar a month? . . . And you were that day you were called to see Mr. Hoffman? . . . . And as a matter of fact the reason why you did not get out or go again to see Mr. Hoffman when you were called was because you had some money in sight from one of your private cases?"

From these questions and others of a like character, it is plain counsel sought to impress the jury with the belief that appellant neglected respondent and did not give his case the necessary and proper medical attention, because he knew he would receive no additional compensation, and for this reason devoted his time and attention to those patients who were not within his contract with the lumber company and from whom he expected to collect for his services, and at the same time take advantage of any prejudice any juror might have against the contract system. It goes without saying that the effect must have been prejudicial. The authorities all agree that, so long as the relation of physician and patient exists, however that relation was formed or whether the service was gratuitous or for an expected fee, the physician owes his patient the same measure of duty and the same degree of care and skill and is to the same extent answerable for the failure of its exercise to the injury of the patient.

Complaint is also made that the court refused to instruct the jury as to the issues, or to make any statement to the jury as to the issues, although requested to do so. We have held, in *Lambert v. La Conner Trading & Transp. Co.*, 37

Wash. 113, 79 Pac. 608, that it was not error for the court to fail to state the issues to the jury where the issues were simple and the instructions as a whole clearly submitted the controversy to the jury. But in a case of this character, with the mass of conflicting testimony shown by this record, the relevant and the irrelevant matter upon which the witnesses were examined, we think it was the duty of the court to make a plain and concise statement to the jury of what the triable issues were, to aid them in determining the only controversy they were called upon to determine. We do not think the instructions in this case did so.

Instructions were also requested by appellant, and refused, to the effect that negligence could not be inferred nor presumed from the failure to effect a cure, and that the condition of respondent's shoulder subsequent to appellant's treatment did not of itself establish an inference that appellant had been negligent in his treatment. Such is the law, and the jury should have been so instructed. *Wood v. Barker*, 49 Mich. 295, 13 N. W. 597; *Sims v. Parker*, 41 Ill. App. 284; *Lawson v. Conaway*, 37 W. Va. 159, 16 S. E. 564, 38 Am. St. 17, 18 L. R. A. 627; 30 Cyc. 1584.

For these reasons, the judgment is reversed, and the cause remanded for a new trial.

Crow, C. J., Parker, Mount, and Fullerton, JJ., concur.