Willie J. Freche brought this suit individually and on behalf of his minor daughter, Imelda Freche, claiming a total of $15,744.32, as damages due to the alleged negligence and want of skill on the part of Dr. Amedee Mary, the defendant, a dentist, who extracted one of Miss Freche's teeth.
The defendant denied all charges of malpractice and negligence and after a trial upon the merits there was judgment below maintaining his defense and dismissing plaintiff's suit. The plaintiff has appealed.
On May 18, 1937, Miss Imelda Freche called at the dental office of the defendant complaining of an aching tooth. Dr. Mary extracted one of her teeth presumably the aching one. Miss Freche returned to her home and two days later, on the 20th, as she was suffering considerable pain, she went back to Dr. Mary's office, when he examined her gums and prescribed a mouth wash and a drug called "anacin" to relieve the pain. She went home, developed considerable temperature, became alarmed and called in Dr. Peter B. Salatich, who operated on Miss Freche at the Hotel Dieu on May 22, 1937. The operation consisted of an opening in the floor of the mouth and the removal of pus, after which three incisions were made and tubes inserted for drainage purposes. The next day her condition, according to Dr. Salatich, became worse and he was obliged this time to make "a very free incision, the whole length of the neck and separate all the muscles of the tissues of the neck because this girl, the structures in the neck had already begun to get black, a most terrific infection".
We are convinced that Miss Freche suffered very much and that her father was put to considerable expense in connection with her operation and if Dr. Mary was responsible therefor she is undoubtedly entitled to substantial damages.
We will now examine the question of Dr. Mary's negligence.
The charges in plaintiff's petition are that the defendant failed to use aseptic precautions prior to the injection of the anesthetic in Miss Freche's gums; that his instruments were not properly sterilized; that the treatment prescribed for Miss Freche was not such as reputable dentists in good standing would have suggested; and that in refusing to call on Miss Freche after being informed of her serious condition, he was guilty of negligence and further that in advising that the infection be undisturbed for six days he was guilty of grave error.
Dr. Mary had been the dentist of the Freche family for a number of years. He was also a graduate doctor of medicine. He described the procedure followed by him in extracting the tooth as follows:
"I took a piece of cotton saturated it with alcohol and phenol five percent and swabbed the surrounding tissues and the tooth. Then I took my hypodermic syringe from my sterilization and inserted the carpule of novocaine and proceeded to give her an infiltration anaesthesia. Before giving her though the anesthetic, I always put my forceps that I chose for the extraction, in my jar with a 25 per cent solution of phenol alcohol while I am giving this injection to insure again (st) asepsis. After a matter of fifteen minutes, I took my forceps, which was in this solution, I shook the solution off from the forceps with a couple of licks, and I pulled the tooth out."
Neither Miss Freche nor her mother, who was present at the time, was able to give any testimony which would indicate that Dr. Mary had not followed this procedure in the preparation for the extraction of Miss Freche's tooth. As a matter of fact, they were unable to give any satisfactory evidence on the subject at all which, under the circumstances, is not unnatural since they were chiefly interested in the comfort and relief of Miss Freche and not in the method by which Dr. Mary removed the tooth.
Dr. Mary contends that the precautions which he exercised are sanctioned by the best dental practitioners and he offered in substantiation of this statement the evidence of two other dentists, Dr. Wallace Nicaud and Dr. Leopold Levy, and a doctor *Page 215 
of medicine, Dr. Rives, all three of whom agreed with him.
Dr. Salatich, whose testimony on the whole is by no means favorable to Dr. Mary, was unwilling to say that the infection of Miss Freche's mouth was due to the improper sterilization of the needle by which the anesthetic was introduced into her gums. He testified that the human mouth cannot be thoroughly sterilized due to the number of germs which are habitually present, such as saphrophytes, streptococcus and staphylococcus. He described the mouth as the filthiest part of the anatomy and stated that it contained ten times more germs than are found in the rectum.
Much is made of the fact that Dr. Mary advised against surgical interference until the sixth day after the beginning of the infection in order that the abscess might "point" or, as it is generally termed in lay parlance, "come to a head". This statement is contrasted with Dr. Salatich's view that the abscess had to be opened at once. Of course, we do not know which of these contradictory statements is correct except as it is reflected by the testimony in the record. We notice, however, that Dr. Nicaud and Dr. Levy agree with Dr. Mary and that Dr. Rives, the medical expert, also agrees with him as appears by the following statement:
"I have never felt it desirable to open an abscess from a dental infection in less than a week after the beginning of that process. I do not mean after the extraction of the tooth; I mean after the beginning of the inflammatory process".
Dr. Rives was asked to examine the hospital chart and to say whether there was anything in the condition of Miss Freche which "would have prompted you as a surgeon to believe her condition was such as would warrant surgical interference", to which he replied "there is nothing in this record at any point on which you could decide that surgical interference should be undertaken". Also in response to a question as to what he would have done, he stated that he would have waited for the localization of the abscess and of its approach to the surface. He testified that the result of the premature incising of an abscess would be to cause the infection to spread far beyond the area in which it existed at the time. In regard to the presence of fever he was of the opinion that it was a favorable rather than an unfavorable symptom. Dr. Rives was also asked "what are the causes of dental abscesses" and he replied:
"I would consider by far the most important, infection already existing about the tooth. Secondly, the pathogenic organisms which exist in the mouth. A very poor third, infection introduced in the process of the extraction of the tooth".
The law with respect to the duties and liability of physicians, surgeons, dentists, etc., is to the effect that they are liable for any injury caused a patient due to want of requisite knowledge or skill or because of the omission to use reasonable care and diligence in the application of such knowledge.
"The great weight of authority is to the effect that in malpractice cases the skill and care of the dentist or physician will be presumed in the absence of any evidence to the contrary." Mitchell v. Atkins, 6 W.W.Harr., Del., 451, 178 A. 593, 594.
In 21 Ruling Case Law, 406, quoted in the Mitchell case is found the following:
"The law accords the medical practitioner the presumption that he has done his duty, and in a suit for injury caused by alleged malpractice the burden is on the plaintiff to prove the want of reasonable or ordinary care or skill. * * * The burden of proof is not shifted by showing an unsuccessful result has attended the treatment of the patient by the physician. Nor does the unsuccessful result of the case shift from the plaintiff to the defendant the burden of going forward".
In Comeaux v. Miles, 1928, 9 La.App. 66, 118 So. 786, 787, this Court said:
"The degree of care which the law exacts of physicians and dentists is that usually exercised by practitioners in good standing", citing Stern v. Lanng, 106 La. 738, 31 So. 303.
In Mournet v. Sumner, 19 La.App. 346, 139 So. 728, 730, we said:
"The rule is well established that a physician or dentist cannot be held liable for the death of a patient under his treatment, where there is no evidence to show negligence or lack of skill on his part, sufficient to overcome the prima facie case in his favor made by the evidence that the treatment adopted by him was the usual and customary one. The fact that a patient died under such circumstances does not raise any presumption of negligence or lack of skill on his part. Hoover v. Buckman, *Page 216 194 Ill. App. 308; Edwards v. Uland, 193 Ind. 376, 140 N.E. 546; Moore v. Smith, 215 Ala. 592, 111 So. 918; McGraw v. Kerr,23 Colo. App. 163, 128 P. 870; King v. Belmore, 248 Mass. 108,142 N.E. 911; Loudon v. Scott, 58 Mont. 645, 194 P. 488, 12 A.L.R. 1487; Hoffman v. Watkins, 78 Wn. 118, 138 P. 664; Miller v. Toles, 183 Mich. 252, 150 N.W. 118, L.R.A.1915C, 595; Woodlawn Infirmary v. Byers, 216 Ala. 210, 112 So. 831; Beckwith v. Boynton, 235 Ill. App. 469; Wilt v. McCallum, 214 Mo.App. 321,253 S.W. 156; Niebel v. Winslow, 88 N.J.Law 191, 95 A. 995; Kuehnemann v. Boyd, 193 Wis. 588, 214 N.W. 326, 215 N.W. 455; McCoy v. Buck, 87 Ind. App. 433, 157 N.E. 456, 160 N.E. 46; Nixon v. Pfahler, supra [279 Pa. 377, 124 A. 130]; Blodgett v. Nevius,189 Ill. App. 544; Wilkins v. Ferrell, 10 Tex. Civ. App. 231,30 S.W. 450."
We conclude from our examination of the record, particularly of the expert testimony, that Dr. Mary was not guilty of malpractice nor do we find any negligence in connection with the extraction of the tooth which is said to have caused all of Miss Freche's distressing condition. As a matter of fact, as we have pointed out, by reference to the expert testimony it seems that an abscessed tooth is much more likely to have been caused by the organisms which are commonly to be found in the mouth, or infection existing about the tooth at the time of extraction than by the introduction of an unclean instrument by a dentist in the process of anesthetizing the gums and preparatory to the extraction of the tooth.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed. *Page 257