## No. 13,836.

### SAMUEL STERN VS. OSCAR R. LANNG.

#### SYLLABUS.

The action was one sounding in tort for the alleged unskillful and negligent manner the defendant, as a physician, performed the duty he had assumed.

The rule is well settled that the oculist who treats a patient must exercise in that regard the care and skill usually exercised by oculists in good standing. He may be rendered liable for his gross mistakes.

It was not shown by a preponderance of testimony that defendant through want of skill or negligence committed a mistake for which he can be held pecuniarily liable. Experts testified that he followed the established practice, and it is not shown that he committed a gross error, the proximate cause of the injury of which plaintiff complains.

A PPEAL from the Civil District Court, Parish of Orleans.— Sommerville, J.

Charles Rosen for Plaintiff, Appellant.

E. N. Whittemore for Defendant, Appellee.

The opinion of the court was delivered by

BREAUX, J. This action was brought by the appellant, Samuel Stern, against the defendant, an oculist, to recover damages for personal injuries alleged to have been sustained by reason of negligence and want of skill of the defendant in the method followed in removing a tumor which plaintiff had on his face just below the left eye.

Having called upon the defendant at his office, he was advised by him to undergo a surgical operation, to which he consented. He averred that after the removal of the tumor, defendant injected a liquid which he believes was acid, burnt his eye and destroyed his sight in that eye.

He alleges, in substance, that the tumor was disconnected from the eye, and that prior to the operation it did not affect his sight, which was perfect; that he has suffered great physical pain and mental anguish by reason of the injury to his eye, which is permanent; that he is not now able to keep books, as he did formerly, and attend to his business.

He complains of the manner he was deluded by defendant from time

to time with false hope of recovery, and avers that the tumor was small, the size of a pea; that the eye was sound and he healthy, and the removal could have been affected without injuring his eyesight.

The defendant controverts the accusations brought against him and avers that he was reasonably careful and skillful in removing the tumor from plaintiff's face; that he followed the usual course prescribed by eminent authors who have written upon the subject and that ordinarily such operations are not attended with injury to the eye.

We have examined as closely as we could the testimony of each of the witnesses. The plaintiff, as a witness in his own behalf, succinctly enough relates the incidents of the operation which led to the deplorable result of which he complains. During the operation he felt great pain, a burning pain, he said, from which he obtained no relief for some time afterwards. The condition of the eye, he says, did not improve under treatment, and since the operation he is unable to see out of the eye. A second operation was performed and it failed to bring about the expected cure. He followed closely the physician's direction, but the applications prescribed did not improve his sight. He was told to be patient and that it would be all right in a couple of months. When the trial took place, it was evident that the sight of the eye was greatly injured and that it would never be restored to the condition in which it was before the operation had been performed. There is force in the argument pressed upon our attention in support of plaintiff and appellant's claim.

The tumor was not large and plaintiff urges that the removal would not have had any consequences at all if the medicine injected had not burnt the eye; that this medicine was "lime or acid or other cauterizing agency" or other caustic.

There is no question that the appellant states the facts as they impressed him. It remains that one who is suffering while undergoing a surgical operation is not always the best judge of the cause of the pain he feels.

As relates to the extent of the injury charged, it appears that on the 4th of September (the tumor was removed on May 2nd), Dr. Jowers, an occulist, examined the eye and found an adhesion of the eyelid to the cornea. It was shown at the trial in December following that there was opacity of the cornea. There was the same cicatrical contractions. Dr. Jowers said he should be able to read and write. He saw, he said, at a distance of about seventeen feet what he should have been able to

see at about one hundred feet; about one-sixth of what his sight should have been in the injured eye. He testified further that he did not think that anything could have been done for him that would have restored his vision. Nature would do no more than any prescription. He said to the plaintiff when he was in his office in September that his eye had been cauterized, and asked him the question. He stated he had discovered nothing since, that confirmed him in that belief. Witness explains that he meant by cauterization that something had been put in his eye that would burn the epithelium layer, or, in other words, the tissue of the cornea. The cornea is the anterior membrane of the eye. Its function is to receive and transmit light into the back part of the eye. It is perfectly transparent in its normal state.

Dr. Paul Reiss, another oculist, testified that if the eye is perfect, a tumor should be removed from the lower lid by exercising reasonable care and skill without injuring the eyesight and that with reasonable care and skill it is possible to stem the blood after the operation.

Plaintiff's attending physician, Dr. W. H. Taylor, who had been his physician before, and was his physician after, the operation, testified that the condition of the plaintiff " at present is that there is this cicatrical adhesion (of the lid), but what it was caused by I don't know." Words in brackets ours. He had occasion to examine the eye about two weeks after the operation by the defendant.

The testimony shows that the defendant, Lanng, is a reputable oculist of large experience. He says that he anaesthetized the *locus* of the trouble by the use of a solution of cocaine, that the ailment was what is called chalagion or torsal cyst containing gelatinous substance, and his reason for removing it as he did was because it would eventually have grown larger and interfere with plaintiff's appearance and spoil his good looks. A crucial incision was made which bled quite freely, as is usually the case. A scoop was used in continuing the operation and cleansing the sac; this was followed by the application of a piece of nitrate of silver for the purpose of producing inflammation. This nitrate of silver, about an inch in length, had about the shape of a lead pencil. Afterward he applied a solution of kitchen salt and bathed the *locus* of the sore with cold water. The next day the patient returned. The lid of the eye was inflamed and in two or three days the inflammation of the cornea was produced. A solution of atrophine was prescribed to repress the inflammation. With the exception of a mild solution of boracic acid, which was used for the purpose of cleansing and

disinfecting, the defendant emphatically states that he applied no other acid.

The account of treatment was heard by Dr. H. Dixon Bruns. He, as an expert, pronounced it entirely proper. He says of the defendant: " I have always regarded him as a very competent man in his profession and a very honest man." As relates to the treatment, he is in terms corroborated by Dr. A. Bowling Pope and Dr. Ed. W. Jones, well known specialists and physicians.

The inflammation of the cornea and consequent opaqueness is ascribed by the appellant to the cauterization of which he complains, but this is not sustained by the testimony. There are, we are informed, a number of causes for it, and that it is impossible to look at the eye and tell whether it has been burnt or not.

The *onus* of proof was with the appellant. The weight of the testimony finds it possible to trace the result to other causes than the asserted negligence and want of skill of the physician. The case was an extraordinary one. We do not think that it must follow that it was the effect of violent acid, as charged by appellant. There is no uncontradicted testimony upon which to base an opinion that, owing to carelessness and unskillfulness, the cornea of the eye was burnt by the use of improper remedy negligently applied. The result of the treatment is not all that is necessary to recover; it must be made evident that there was negligence or want of skill.

There was intense pain felt by plaintiff after the incision. It does not necessarily follow, as we infer, that it was owing to the negligence or unskillfulness of the physician. Plaintiff says that according to defendant's own theory the inflammation did not extend to the cornea till two or three days after the operation. Plaintiff must have been able to see according to defendant's theory, for he, defendant, did not discover any inflammation before two or three days after the operation, and he testifies that inflammation was the cause of the opacity of the cornea. But plaintiff swears that he could not see immediately after the tumor had been removed. This fact, he contends, shows that the injury was caused by the use of acid or other agency in removing the tumor, causing blindness in one eye immediately after its use, and that it could not have been from the inflammation discovered two or three days after the operation. The plaintiff states positively and repeatedly that he has never seen out of the eye since the operation. But this conclusion, in view of the evidence, is not uncontrovertible. It is evident, however,

that if this conclusion be accepted, it would exclude inflammation as the cause, and fix the responsibility on the defendant of having, by his negligence and want of skill, injured plaintiff's eye.

The cornea, it appears, was not inflamed for two or three days after the operation, but the defendant testified that the next day the plaintiff's eyelid was considerably inflamed, and in the course of two or three days the inflammation of the cornea was produced. The sight, it may be, was blurred before the inflammation was felt. There may have been other destroying agencies which brought about the lamentable result. The testimony does not with reasonable certainly fix the responsibility.

We will say that while a slight slip of the hand while operating may cause very injurious results, the defendant is a trained specialist and such accidents, we infer from the testimony, seldom occur. In this case the facts negative the theory that defendant, through his fault and negligence, burnt the eye.

The plaintiff avers that the defendant injected into the petitioner's eye a liquid which he was informed and believed was acid and thereby cauterized his eye. We have noticed that, with the exception of a mild solution of boracic acid, which the testimony shows could not have caused the injury, no other acid was applied to the wound.

The defendant stated as a witness and himself enlarged the issues of the case, that he had used but had not misused, in the operation a small stick of lunar caustic or nitrate of silver. We take it that this was the only agency that might have caused the injury by its misuse, that is, that if it had been applied to the cornea instead of to the incised place on the lid, that injury would have followed. There is no direct testimony showing that it was applied to the cornea. The defendant swears that he did not touch the cornea with it. We would not be justified in assuming that in this he erred, for we do not think that the testimony would sustain the conclusion. It does seem that if the lunar caustic had been so unskilfully and negligently used, it would have been seen on the spot by some one present; that the defendant, to whom reference is made in the testimony as being an honest man, would have become confused and would have continued in that state to an extent that he would not have been able (we will not say to deny the act, for he was not charged in the pleadings with doing that particular act) to testify that he had applied lunar caustic to the incision, but not to the cornea.

With reference to the complaint of plaintiff that defendant sought

to lull his anxiety (which was natural) about his eye by telling him to be patient, to let nature act, in time it would be all right, we do not think there is anything in this for which the defendant can be held liable.

Appellant complains of the expert fees as fixed by the court. The three witnesses to whom we have before referred as experts were summoned by the defendant as witnesses in his own behalf, and before testifying, demanded a fee of fifty dollars. To this plaintiff, through counsel, objected. The court allowed them each twenty-five dollars. Appellant contends that this allowance is illegal, and that a defendant cannot summon what witnesses he pleases, and because the testimony he seeks is in the nature of expert testimony, have fees taxed as experts.

We take it as well settled that it is within the court's power to determine the amount of the compensation, also to restrain the litigant and keep him within proper bounds, who summons or attempts to summon uselessly a number of expert witnesses. Here the number was not excessive in view of the importance of the issues. Act 19 of 1884 provides for compensation to be fixed by the court where the testimony requires special study and experience, and the amount of compensation is in great part left to the judge.

The law and the evidence being in favor of defendant, the judgment is affirmed.

Rehearing refused.