(110 So. 106)

No. 27478.

**ROARK et al. v. PETERS et al.**

**In re ROARK et al.**

(Oct. 5, 1926. Rehearing Denied Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Physicians and surgeons** ⟺14(1).

Where, in spite of exercise of ordinary skill and care in performing Cæsarean operation, sponge was left in abdomen of plaintiff, action for damages for pain and anguish ensuing would not lie.

2. **Physicians and surgeons** ⟺14(4).

Physician or surgeon, undertaking treatment of patient, is required to exercise that degree of skill and learning ordinarily possessed and exercised by members of his profession in good standing practicing in similar localities.

O'Niell, C. J., and Thompson, J., dissenting.

Certiorari to Court of Appeal, Second Circuit.

Action by Margery R. Roark and her husband against Dr. James I. Peters and others. A judgment adverse to plaintiffs was affirmed by the Court of Appeal, and plaintiffs apply for certiorari or 'writ of review. Affirmed.

Bruton T. Dawkins, of Alexandria, for applicants.

Hakenyos, Hunter & Scott, of Alexandria, for defendants.

BRUNOT, J. This is a suit for damages for physical injuries, pain, mental anguish, and expenses growing out of a Cæsarean section operation performed upon Mrs. Margery M. Roark by Dr. James I. Peters. The petition alleges that the operation was performed in a careless and negligent manner. There are several defendants, and plaintiffs pray for a judgment against them, in solido, for $26,996. The items of damage are enumerated as follows: $15,000, for which Mrs. Roark prays for judgment in her own right, for pain and mental anguish, and $5,000, as the cost of another operation which is alleged to be necessary; and Mr. Roark, as head of the community, prays for judgment for $1,996 for doctors' and nurses' bills, hospital fees, and traveling expenses incurred in the treatment of his wife, and $5,000 for mental anguish and suffering he endured as the result of defendants' negligence in performing the operation. The parties made defendant in the suit are Dr. James I. Peters individually, the executive board of the Louisiana Baptist convention, and the partnership composed of Dr. James I. Peters and Dr. George C. Anthony. Dr. James I. Peters excepted to two items of damage alleged in the petition; viz. the item of $5,000 for an operation to be performed in the future, and the item of $5,000 for pain and mental anguish suffered by Mr. Roark. The court found that a cause of action was not alleged as to these items and it sustained both exceptions. Exceptions of no cause of action were also filed on behalf of the partnership of Drs. Peters & Anthony and the executive board of the Baptist convention, which were likewise sustained, and these exceptors were dismissed from the suit. The plaintiffs then filed an amended petition which, on the motion of defendants, was stricken from the record. An application for a review of this judgment was made to the Court of Appeal, but that court denied the application, and thereupon Dr. James I. Peters, the sole remaining defendant, filed a plea of estoppel based upon the judicial averment in the plaintiff's supplemental petition that the operation which gave rise to the suit

was performed by the partnership of Peters & Anthony and sought to hold that firm in damages in the place and stead of Dr. James I. Peters individually, on whom plaintiffs undertook to fix the responsibility in their original petition. After Dr. Peters answered the suit, plaintiffs also filed a plea of estoppel upon the ground that Dr. James I. Peters, as a member of the partnership of Peters & Anthony, pleaded in bar of plaintiff's action against that partnership the exception of no cause of action, which was sustained, and he is therefore now estopped from urging in his answer the partnership's defense or that he acted only as a member of the partnership. Both pleas of estoppel were referred to the merits. The case was tried and from an adverse judgment the plaintiffs appealed. The Court of Appeal affirmed the judgment, a rehearing was applied for and denied, and, on plaintiff's application to this court, certiorari or writ of review issued, and the case is now before us in response to this writ.

The record is voluminous but the material facts of the case appear to be accurately stated in the brief of defendant's counsel, which may be summarized as follows: Mrs. Margery M. Roark was pregnant and looked forward to her confinement. She was at the home of her sister, Mrs. J. G. Thompson, in the city of Alexandria. Upon the advice of her relatives and friends, she engaged the services of Dr. James I. Peters, who was and is a partner of Dr. George C. Anthony. Dr. Peters made an examination of Mrs. Roark and visited her at intervals pending the date of her delivery. On February 19, 1922, Mrs. Roark was unexpectedly seized with a hemorrhage and Dr. Peters was summoned to treat her. He found her prostrate on the bathroom floor, in a pool of blood. After a hasty examination, he realized the necessity for an immediate delivery of the unborn child and requested that a consulting physician be employed. Dr. G. M. Stafford was selected by the family and Mrs. Roark was taken to the Baptist hospital, in Alexandria. Upon the arrival of Dr. Stafford, it was decided that an immediate delivery of the unborn child was imperative and that a Cæsarean section operation was the safest and most expedient method of delivery. The relatives of the plaintiff agreed to this, physicians were called, and preparations made for the operation. The hospital furnished the operating room, the necessary instruments, sponges, paraphernalia, and nurses. The physicians present were Drs. Peters, Stafford, Rand, and Anthony and the nurses who assisted were Miss Yates, the supervisor of the operating room, and Misses Cleve and Poe, hospital nurses. Dr. Peters, assisted by Dr. Stafford, performed the operation. Dr. Rand administered the anæsthetic and Dr. Anthony took care of the child upon its delivery. All of the sponges used in the operation had been previously prepared by the nurses who delivered them to the physicians in the operating room. The sponges were counted by the nurses prior to the operation and put up in packages. The operation was performed; the child was safely delivered; all sponges that were visible to the eye or discoverable by touch were removed from the abdomen; the supervising nurse was called upon to account for all sponges which had been used in the operation; she counted the sponges and reported one small sponge missing; pending a search for the missing sponge, the patient was kept under the anæsthetic; and, upon the supervising nurse reporting that the missing sponge was found, the operation was completed, and the wound closed. Mrs. Roark did not entirely recover from the operation and 22 days thereafter she was again taken to the Baptist Hospital, and an examination under the X-ray and flouroscope failed to indicate the presence of any foreign substance in the body or the necessity for another operation. Mrs. Roark continued to

suffer, however, and eventually went to Memphis, where Dr. J. A. Chrisler performed a second operation and removed from her abdomen a large lap or towel sponge, after which operation she regained her health. In discussing the alleged error in the decrees of the district court and Court of Appeal, counsel for plaintiffs says:

"In the present instance, both courts have seen fit to ignore the well-recognized and admitted proposition that malpractice cases fall into *two* entirely *separate* and *distinct classes*. The first class of malpractice cases are those involving an alleged error of judgment or of diagnosis on the part of the defendant. The principle enunciated by the Court of Appeal and the decisions cited by it apply only to that class.

"The second class of malpractice cases consists of those where surgeons or physicians are charged with an admitted, affirmative act of negligence, such as leaving a sponge, instrument, or other foreign substance in the body, pulling the wrong tooth, cutting off the wrong leg, or removing the wrong organ. In instances such as these, expert testimony is not necessary for a court to determine whether or not defendant was negligent. The fact that he did leave a sponge or an instrument in the body, that he did remove the wrong organ, or that he did amputate the left leg, when the right leg was the one affected, is, in itself, and without any explanatory expert testimony, sufficient to convince any reasonable man or any court that the defendant was guilty of negligence."

[1, 2] Counsel contends that this case falls within the second class of malpractice cases, but he overlooks the fact that it is a rule of universal application that, regardless of the allegations in the petition:

"A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible. He is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in similar localities, and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning and to act according to his best judgment." 30 Cyc. p. 1570.

In the case of Cassingham v. Berry, 67 Okl. 134, 150 P. 139 et seq., the court was requested to charge that:

"Common sense dictates that leaving the sponges in the abdominal cavity is absolutely and totally inconsistent with the exercise of ordinary care."

The Supreme Court of Oklahoma correctly comments upon this requested charge as follows:

"The doctrine advanced, in this position of the plaintiff, is too exacting for human affairs. It is tantamount to saying that, if ordinary care had been used, no mistake could have occurred. It assumes that the exercise of ordinary care would have rendered a human being infallible. And it is a matter of common knowledge, based upon everyday experience, that, even in the exercise of the utmost care, all men do make mistakes. And it was not error, under the pleadings and evidence in this case, for the court to instruct the jury that, though they believed the defendant left the sponges in the body of deceased and her death was the natural and proximate result thereof, yet if they also believed from the evidence that the defendant, in performing this operation, exercised ordinary care in keeping track of the sponges and seeing to it that they were all removed before the incision was closed, he could not be held liable for negligence. The basis and gist of this action was not the result of the operation, but negligence in the performance of it. If there was no negligence in the performance of the operation, then there was no cause of action and there could be no recovery; if there was negligence in the performance of the operation, then a recovery could be had. Whether or not the defendant exercised that degree of care in performing the operation that the law imposed upon him was the paramount question and the test of the rights of the parties."

This decision fits this case like a glove and the great weight of authority supports it. A number of decisions are cited by both counsel, but, inasmuch as the testimony conclusively shows that every reasonable precaution was taken to account for all sponges used in the operation before the wound was closed, that the operation was so properly and skillfully performed that the life of both mother and child was saved, and that there is no charge in the petition of any want of skill in the performance of the operation, we do not consider it necessary to review them.

We think the judgment is correct and it is therefore affirmed at relators' cost.

O'NIELL, C. J., and THOMPSON, J., dissent.

OVERTON, J., takes no part.