GULOTTA, Judge.
This is an appeal from a jury verdict and judgment dismissing plaintiff’s suit in a medical malpractice matter.
The sole issue before this court is whether the jury verdict was manifestly in error.
Plaintiff suffered with a long history of back problems beginning with an injury in 1953 requiring surgery on several occasions resulting in 1962 in a fusion of the vertebra being performed by Dr. Irvin Cahen. In 1965, the plaintiff reinjured his back and consulted Dr. W. Randolph Page. He complained of severe pain of the right side of his back extending into the right leg. Dr. Page’s diagnoses was radiculitis (an inflammation of a portion of the spinal nerve root) S-l right caused probably from damage to the nerve root. Defendant suggested that he perform a sensory rhizotomy (a severing of the nerve root) in which a portion of the damaged nerve root is removed thereby alleviating the pain. Plaintiff agreed to the surgery but requested that Dr. Page not disturb the fusion heretofore performed by • Dr. Cahen. In an attempt to preserve the fusion, Dr. Page approached the S-l nerve root from the sacral (lower) area in lieu of the lumbar (upper) region.
While plaintiff did not complain of the defendant’s decision to approach the nerve root from the lower area, it is his contention that his injury required surgery on the right side of his back and that Dr. Page was grossly negligent in that he erroneously attempted to perform the operation on the left side. As a result, Dr. Page became disoriented and confused, causing the operation to require an abnormal amount of time while he needlessly probed. This negligence resulted in an unsuccessful operation causing prolonged pain and necessitating two subsequent operations.
Plaintiff further argues that corrections were made to the hospital chart as originally written which altered the designation of where the operation or incision had been. These changes he contends support his claim of defendant’s negligence. Plaintiff additionally argues that Dr. Page prematurely released him from the hospital thereby causing hemorrhage to develop resulting in his return to the hospital for the purpose of having the incision drained, cleaned and resutured.
*722 We find these contentions to be unfounded. Dr. Page testified that he made the incision to the right of midline and approached the nerve root from the sacral area instead of the lumbar area to avoid disturbing the fusion as requested by plaintiff. The testimony of the experts reflects that a surgeon is able to find the nerve root by tracing those recognizable bones in the back known as landmarks. The difficulty of this process was increased for Dr. Page during the operation because the fusion and other operations performed on plaintiff’s back had abnormally distorted the lumbo sacral area. Thus, in place of ordinary guidelines of recognizable bones to be used as landmarks in finding the nerve root, Dr. Page was confronted instead with an area of indistinguishable bone the size of a hand in the sacral area. Dr. Page described plaintiff’s back as not a normal back but rather “a grossly abnormal structure”. The initial operation lasted about eight hours while Dr. Page explored both the left and right sides of plaintiff’s back in search of landmarks.
The medical experts who testified at the trial indicated that Dr. Page’s diagnosis and operative techniques were proper. Dr. Dean Echols, an expert in neurosurgery and noted for his experience with rhizot-omies, agreed that Dr. Page’s diagnosis of radiculitis S-l right was correct in view of the circumstances and that a rhizotomy was a reasonable and right choice of operation. Dr. Echols and Dr. John D. Jackson both approved of Dr. Page’s decision to approach the nerve root from the sacral area rather than the lumbar in order to save the lumbar fusion. Dr. Echols stated that it is not abnormal for a surgeon to become disoriented when normal landmarks are missing despite the exercise of reasonable care. This disorientation, according to Dr. Echols, does not indicate negligence. It is significant that plaintiff failed to produce any expert testimony whatsoever to contradict that offered by defendants.
Plaintiff argues that Dr. Page’s decision not to use x-rays during the operation to help re-orient himself constituted negligence. However, as in other contentions, plaintiff failed to offer any expert testimony in support of his assertion. On the contrary, Dr. Page considered the factors and concluded that the risk of infection was too great and the available equipment was portable and not likely to produce the best results. Dr. Echols, Dr. Lester Eav-enson, a radiologist, and Dr. A. W. Dunn, an orthopedist, agreed with the defendant’s reasoning.
Plaintiff’s assertion that Dr. Page removed the stitches and discharged plaintiff prematurely after the first operation was refuted by the expert testimony. We are convinced that the opening of plaintiff’s incision in this case cannot be attributed to any negligence of the defendant.
In August of 1967, a successful rhizoto-my was performed on plaintiff by Dr. Page. This time Dr. Page approached the nerve root from the lumbar area instead of the sacrum. It was, however, necessary for him to remove the fusion which he had attempted to preserve during the first operation.
Plaintiff’s contention that Dr. Page should have reinstituted the fusion during this operation is without merit. Dr. Echols, Dr. Dunn, and Dr. Jackson all agreed it was necessary to remove the pre-existing fusion to reach the S-l root. Neither Dr. Echols nor Dr. Jackson is of the opinion that a rhizotomy and fusion should be performed in one operation. Thus, Dr. Jackson felt Dr. Page’s decision to delay the fusion was reasonable and correct. Plaintiff again failed to offer any contradictory medical evidence to prove his claim in this respect.
Plaintiff seeks to invoke the doctrine of res ipsa loquitur contending that an inference of negligence was established from which defendant failed to exculpate himself. The Supreme Court in Jones v. Shell Petroleum Corporation, 185 La. 1067, *723 171 So. 447, 449 (1936) explained the evi-dentiary rule of res ipsa loquitur:
“Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in absence of explanation by defendant, that the accident arose from want of care. 45 C.J. § 768, p. 1193.”
* * * * * *
“While negligence is never presumed as a matter of law from the happening of an accident, the happening of the accident with its attendant circumstances may justify the inference of negligence. Thus, when the thing which produced the injury is under the control of the defendant or his servants and the injury would not have occurred unless negligence had been present in some form and the facts causing the injury are peculiarly within the knowledge of defendant and not equally accessible to plaintiff, the burden is on defendant to explain the cause of the accident, if he desires to escape from the inference of negligence.”
See also: Saunders v. Walker, 229 La. 426, 86 So.2d 89 (1956).
We are of the opinion that the doctrine of res ipsa loquitur is not applicable in the instant case. In our view, the facts presented did not sufficiently establish an inference of negligence related to any injury suffered by plaintiff or show that the prolonged pain and additional operations would not have occurred unless defendant was negligent.
According to the jurisprudence, a physician is not required to exercise the highest degree of skill and care possible. It is the physician’s duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in the same community, and to use reasonable care and diligence, along with his best judgment. Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954); Roark v. Peters, 162 La. 111, 110 So. 106 (1926); Wells v. McGehee, 39 So.2d 196 (La.App. 1st Cir. 1949); Uter v. Bone and Joint Clinic, 249 La. 851, 192 So.2d 100 (1966).
The record contains no proof supporting plaintiff’s varied and numerous attempts to show any negligence of the defendant. On the contrary, the record is replete that Dr. Page acted with reasonable care and diligence according to the standards of physicians in the community. There is no evi-dentiary basis for concluding that Dr. Page deviated from these standards.
We are of the opinion that the jury verdict is not manifestly in error. To the contrary, it is amply supported by the record. The judgment is affirmed.
Affirmed.