292 So.2d 328 (1974)
Elnora BROCK, Plaintiff-Appellant,
v.
Dr. Edwin I. GUNTER, Defendant-Appellee.
No. 12268.
Court of Appeal of Louisiana, Second Circuit.
March 19, 1974.
*329 Booth, Lockard, Jack, Pleasant & LeSage, by H. F. Sockrider, Jr. and Fred H. Sutherland, Love, Rigby, Dehan & Love, Shreveport, for plaintiff-appellant.
Mayer & Smith, by Alex F. Smith, Jr., Shreveport, for defendant-appellee.
Before PRICE, HALL and WILLIAMS, JJ.
PRICE, Judge.
This is an action in tort, and alternatively for breach of contract for damages allegedly resulting from acts of negligence and lack of due care in professional treatment rendered by a dentist.
Mrs. Elnora Brock seeks a monetary judgment against Dr. Edwin I. Gunter, a Shreveport dentist, for discomfort, embarrassment, damage to teeth, and future cost of periodontal treatment, allegedly resulting from Dr. Gunter's having performed certain dental work in a negligent manner and not in accordance with the assurances given plaintiff as to the results to be attained from the treatment.
From the trial court judgment rejecting plaintiff's demands, she has perfected this appeal. We affirm the judgment.
While a guest of plaintiff and her husband on a hunting trip in the latter part of 1968, Dr. Gunter discussed with plaintiff her concern over her regular dentist's belief it would probably be necessary to remove all of her teeth in the immediate future as a result of periodontal disease. Dr. Gunter gave plaintiff some indication that proper treatment could prevent or delay loss of teeth in some cases where periodontal disease is involved. Plaintiff soon thereafter consulted Dr. Gunter in his professional capacity for an evaluation of her dental problems. On January 9, 1969, after taking X-rays and making a clinical examination of plaintiff's teeth, Dr. Gunter confirmed the presence of severe periodontal disease and existing loss of a portion of the bony support for both upper and lower teeth. He suggested he perform treatment consisting of scraping and curretaging under the gum area to arrest the disease. Plaintiff's four upper front teeth were found to be extremely loose. Dr. Gunter recommended the removal of these teeth and after treatment of the diseased areas, she be fitted with a permanent type bridge, along with crowning and splinting of all other upper teeth to form an arch unit for stabilization of the remaining natural teeth.
As a second phase of work he proposed to perform similar treatment to the lower teeth. He estimated this procedure would postpone the extraction of her teeth from five to seven years longer. A written itemization of the estimated cost of this work was given to plaintiff.
The work on plaintiff's upper teeth was performed during the course of the succeeding two months. Prior to the preparation of the permanent bridge and the application of pontics on teeth to be crowned, Dr. Gunter consulted plaintiff about the desired shade of color for the teeth. The dental laboratory technician, Mr. Bill Bradford, was called in to assist in selection of the proper color. A shade referred to as "bioblend 100" was agreed upon. After showing the first teeth received from the laboratory to plaintiff, they were returned for correction of the length. Dr. Gunter also instructed the laboratory to remove the translucency to make the teeth a solid white. It is disputed as to whether he did this at the insistence of plaintiff because she was dissatisfied with the appearance of the first teeth viewed by her. After this modification the proposed work on plaintiff's upper teeth was completed.
The day following the completion plaintiff returned to Dr. Gunter with the complaint the teeth used were much too white and did not resemble the color of her natural teeth. The front six upper teeth were removed and replaced with the color originally selected. No change was made in the teeth to the rear of the cuspids.
*330 After this modification, plaintiff complained the new front teeth were too short in relation in her rear teeth and did not project properly when she attempted to smile. Although the color of the front six teeth was then satisfactory, she felt the whiter rear teeth made her look unnatural. Another element of dissatisfaction of plaintiff was a change in the bite which caused her pain and discomfort and a sensitivity to heat and cold. Dr. Gunter did some grinding of the upper and lower molars in an attempt to correct any abnormality in the bite. The relationship between plaintiff and Dr. Gunter became progressively more strained and Dr. Gunter had not further contact with plaintiff after July, 1969. Treatment of the lower teeth had never begun. On October 15, 1969, Dr. Gunter wrote plaintiff a letter advising her she needed to continue regular dental care and as she had become dissatisfied with his services, she should consult someone else to maintain work performed to that date.
Plaintiff thereafter, on October 29, 1969, consulted Dr. John H. Grogan, another general dentist of Shreveport. Dr. Grogan removed the permanent bridge placed by Dr. Gunter and replaced it with a semi-removable "Andrews bridge." The pontics on the remaining teeth were also replaced with a color to blend with the other teeth attached to the "Andrews bridge." Similar work was eventually accomplished by Dr. Grogan on the lower teeth.
Plaintiff's allegations of improper dental care fall into two categories: (1) those relating to a lack of care in the treatment of the periodental disease, and (2) the failure to use proper professional skill in the selection and application of an appropriate dental device to adequately fulfill the needs of plaintiff from an aesthetic standpoint and in disregard of the agreement had with plaintiff as to the results to be attained.
Plaintiff contends at the time she first consulted Dr. Gunter on January 9, 1969, her periodontal disease had progressed to a stage where only a specialist in the treatment of this condition could have supplied the proper care and treatment, and the failure of Dr. Gunter to refer her to a periodontist was below the standard of care usually exercised by general dentists in the Shreveport area. Secondly, she contends even though some general dentists may attempt to treat periodontal disease in this locality, no actual or effective treatment for this condition was performed on her by Dr. Gunter.
Plaintiff further contends that if it is shown Dr. Gunter treated the disease in accord with the prevailing community standards, then it was negligence to have done so as this type of treatment would not have adequately protected plaintiff from progression of the condition.
The principal contention of plaintiff in regard to negligence in selection of the prosthetic device is the alleged inadequacy of the fixed bridge to offer sufficient support for the upper lip. This results from the accumulated loss of an estimated 50% of the bony structure around the sockets of the teeth due to periodontal disease and some shrinkage of gum tissue after removal of the four front teeth. Plaintiff contends the most appropriate device to have alleviated this condition would be either a removable bridge with teeth attached, or the semi-removable "Andrews bridge." In addition, plaintiff asserts defendant did not follow the accepted practice in the community in the selection of color shades to give her a more natural appearance.
The general rule of law on the duty of a physician or dentist in caring for a patient is set forth in Meyer v. St. PaulMercury and Indemnity Company, 225 La. 618, 73 So.2d 781 (1953), as follows:
"A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise *331 the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case. Stern v. Lanng, 106 La. 738, 31 So. 303; Roark v. Peters, 162 La. 111, 110 So. 106; Comeaux v. Miles, 9 La.App. 66, 118 So. 786; Freche v. Mary, La.App., 16 So.2d 213; Brashears v. Peak, La. App., 19 So.2d 901; Wells v. McGehee, La.App., 39 So.2d 196. See also 70 C.J.S. Physicians and Surgeons § 41.
The failure of a physician or dentist to perfect a cure does not create any presumption of negligence in the course of treatment. In Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963), the Supreme Court emphasized this rule in commenting thusly:
"We think the general rule universally obtaining on the subject matter is that: `When a physician undertakes the treatment of a case he does not guarantee a cure, nor is any promise to effect a cure or even a partial healing to be implied, nor does the law raise from the fact of employment an implied undertaking to cure, but only an undertaking to use ordinary skill and care. For this reason a physician cannot be held up to a standard of civil responsibility similar to that of engineers, mechanics, and shipbuilders. Of course a physician might contract specifically to cure and he would be liable on his contract for failure, but, in the absence of such a special and peculiar contract, the fact that treatment has resulted unfavorably does not even raise a presumption of want of proper care, skill, or diligence. * * *' 21 R.C.L. Sec. 36, p. 391. Also, see 70 C.J.S. Physicians and Surgeons § 57, pp. 981, 982 `A dentist, like a physician or surgeon, is not an insurer or guarantor of results, in the absence of express agreement.' 41 Am.Jur., Physicians and Surgeons, Sec. 104, p. 219."
The written reasons for judgment given by the trial judge indicates he followed the law as set forth above, and specifically the ruling of the Supreme Court in Phelps v. Donaldson, supra. He found the treatment of Dr. Gunter to be within the standard of care of dentists practicing in the Shreveport area in all phases of treatment undertaken on plaintiff. He did not find the evidence to show Dr. Gunter had contracted to achieve the results contended by Mrs. Brock.
After a careful review of the record, we find the evidence to support the trial judge's conclusion on questions of law and fact.
We do not find it necessary to discuss the testimony of the three medical witnesses who testified on behalf of plaintiff in detail. Two of these witnesses, Dr. Russell Cecola and Dr. John Grogan, are dentists engaging in a general practice in Shreveport and have more than ten years experience each. Dr. Phil Mayer, a periodontist, had practiced dentistry limited to his specialty in Shreveport one year and eight months.
We do not consider Dr. Mayer's testimony relevant as he testified to advanced procedures in periodontal treatment that were unfamiliar to a general practitioner in this area in 1969. From the testimony of Dr. Grogan and Dr. Cecola it is well established treatment of periodontal disease was performed by general dentists in 1969 and only a small percentage of patients were referred to a periodontist. Dr. Grogan, plaintiff's witness, treated her for this condition and did not see fit to refer her to a specialist.
It is disputed whether Dr. Gunter actually did scaling and curretage work on plaintiff while she was his patient. He testified positively he did and plaintiff testified to the contrary. In any event, according to the testimony of Dr. Mayer who reviewed the X-rays taken by Dr. Gunter when *332 plaintiff first consulted him, and those taken by Dr. Grogan in October, 1969, no progression of the disease occurred during this period of time. Therefore, any failure in this regard did not result in further damage to plaintiff's teeth.
The evidence shows the dental appliance prepared by Dr. Gunter was done in a workmanlike manner and was adequate from a functional standpoint. There is no doubt the most beneficial prosthetic device for plaintiff for aesthetic purposes was the so-called "Andrews bridge." This is a semi-removal bridge introduced into this area by its inventor some two years prior to 1969. In essence it is a fixed metal rod to which the teeth are clasped onto. The next best device from a cosmetic viewpoint would have been the fully removable partial plate. These devices would have given more support to the upper lip at the gum level.
Dr. Gunter testified he discussed all of these with plaintiff but she did not want anything removable in her mouth. For this reason, he elected to use the permanent bridge. He also testified he originally determined the color shade which was appropriate for plaintiff, "bioblend 100", but on showing the teeth on the model to her, she insisted her teeth were much whiter than that when younger and she desired a whiter shade. He therefore allowed the patient to make the decision.
Dr. Gunter's testimony is contrary to that of plaintiff in these respects. However, Mr. Bradford, the laboratory technician, gave testimony which corroborated Dr. Gunter's version. The trial judge accepted Dr. Gunter's testimony, and we find no error in this regard.
The evidence is insufficient to show any contract or agreement by Dr. Gunter to achieve any specific result in plaintiff's appearance. Nor do we find the evidence to show any agreement to use porcelain material instead of luxene in the preparation of the teeth. These matters are factual and the trial judge's determination should not be disturbed on appeal unless there is manifest error.
For the foregoing reasons the judgment appealed from is affirmed at appellant's costs.