The defendant herein is Dr. Rowland H. Peak, a practicing dentist in the City of Baton Rouge, who is being sued for damages for the alleged careless and negligent way in which he attended professionally one of his patients, Mrs. Sarah Elizabeth Brashears, wife of John P. Brashears, in removing a lower left bicuspid tooth from her jawbone. Mrs. Brashears' demand is for pain, suffering and discomfort, in the sum of $1,500, and for permanent impairment to her health and nerves, in the sum of $2,000. He husband joins her in the suit and makes demand for the sum of $89.75 for medical and hospital services alleged to have become necessary by reason of the gross negligence and carelessness of the defendant after he had failed to remove the root of the tooth which he had broken at the time of the alleged attempted extraction.
In the petition it is alleged that in the month of July, 1937, Mrs. Brashears employed the defendant to extract all her teeth and to make a set of false teeth and that in pursuance of the said employment he did, from time to time beginning in July, 1937, and up to about December 15, 1937, extract her teeth except as in the manner later on outlined and made for her a set of upper and lower false teeth which she began to wear during the latter part of December, 1937.
It is then set out that about the middle of November, 1937, in attempting to extract the bicuspid tooth referred to, the defendant broke the crown without removing the root and informed her that he had done so, stating that he had not had time to remove the root before she had come out of the influence of the gas which he had administered for the purpose of performing the extraction but that he would do so upon her next professional visit to his office. It is then alleged that during the first part of December, 1937, she returned to his office and he again administered gas in order to extract some remaining teeth and that when she was under the influence of the gas he performed certain surgical work in the socket in which the root of the broken bicuspid tooth remained and that after he had completed this work on that day, he informed her that he had removed the root of the broken bicuspid tooth. It is next alleged that the defendant made a plate or set of false teeth for her which she began wearing, and then gradually the gums in her mouth healed completely except at that spot over which the root of the broken bicuspid remained. That she made several visits to his office between December, 1937, and June 23, 1939, and upon each occasion complained that the gum over that portion of her jawbone was not healing and that it was sensitive and pained her. On each occasion, it is alleged, the defendant would assure her that that condition was not unusual and was caused by pressure of the plate over that area of the gum. That defendant would then treat her gums and would perform some adjustment work on the plate in order to relieve the pain of which she complained. This continued until about June 23, 1939, when the gum around the socket of the jawbone where she complained of pain became inflamed and abscessed and she again called at the defendant's office, at which time he made an X-ray picture of that portion of her jawbone and informed her for the first time that the root of the bicuspid tooth was still in the socket. That, acting on his advice, she called at his office on the afternoon of June 23, 1939, when he again administered gas and attempted to remove the root of the said tooth but was unsuccessful. That she again called upon the defendant on June 28, June 29 and June 30, 1939, for treatment, but that on the night of June 30, or early the following morning, she became so severely ill from the effects of the condition of her jawbone that her physician, Dr. C.A. Voss, had *Page 903 
to be called to her home. That Dr. Voss treated her until July 3, when he advised that she be removed to the Baton Rouge General Hospital where he operated upon her and extracted the infected root of her tooth. She then sets out the pain and suffering she endured and the necessity of further hospitalization in order to more definitely set out the damages which she claims.
The defendant first filed a plea of prescription which was overruled by the trial judge and then filed his answer in which his defense may be said to be a denial of the alleged carelessness and negligence charged against him and also the affirmative defense that the technique which he used in extracting Mrs. Brashears' tooth was the standard method employed by all reputable dentists in such cases and that the treatment which he gave her after the extraction was likewise proper and correct, skillful and scientific. The defendant particularly denies that he ever told Mrs. Brashears that the root of her lower left bicuspid had been removed but avers on the contrary that he had previously advised her on numerous occasions that it had not been removed for the reason that in due course, nature would force it to come nearer to the surface of the gum, at which time it would be much easier and far less dangerous to remove it. In the alternative plaintiff pleads in the event it should be held that he was negligent in any manner as alleged by the plaintiff, Mrs. Brashears, that her claim is prescribed and barred by the lapse of one year.
After trial of the case in the lower court on the merits, judgment was rendered in favor of the defendant dismissing the suit of the plaintiffs at their costs. From that judgment they have taken the present appeal.
The only law that is involved in the case is with respect to the duties and liabilities of professional men such as physicians, surgeons and dentists, to their patients, arising out of the want of requisite knowledge or skill or because of their omission or failure to use reasonable care and diligence in the application of what knowledge they possess. The rule, as is generally stated, and as recognized in this State, is that the law only exacts of physicians and dentists that degree of skill and care which is usually possessed and exercised by practitioners of their profession in good standing. The weight of authority seems to be also to the effect that in malpractice cases, the skill and care of the dentist or the physician involved will be presumed, in the absence of any evidence thereto contradictory. That rule was the one followed by the Court of Appeal of Orleans Parish in the recent case of Freche v. Mary,16 So.2d 213.
In the light of the testimony on the question of negligence in the case before us, it may be important to observe that in Perrin v. Rodriguez, 153 So. 555, 557, the Court of Appeal, Orleans Parish, had under consideration a case in which, as is stated in the opinion, "it is conceded that it is negligent for a dentist who removes a tooth to allow any part to remain in the mouth of the patient." In view of the almost unanimous testimony of the dentists who testified in the present case, that it is by no means unusual, in cases of extraction, to break a tooth and leave roots in the jawbone of the patient, it is somewhat difficult to understand how such a thing could have been conceded in the Perrin case. One of the witnesses for the plaintiffs, Dr. J.E. St. Amant, a dentist, put it rather forcibly when he stated that he does not believe "there is a dentist in the United States who has not left a root in a patient's mouth." Dr. Voss, a medical doctor, also testifying as a witness for the plaintiffs, in answering the question whether he knows any dentist who would say that he has never failed to pull a whole tooth out without leaving part of the root in, answers that if a dentist told him that he never broke a tooth off he would wonder if he were telling the truth. All the dentists who testified on behalf of the defendant said that it was perfectly natural for such a thing to happen and Dr. Walter Comeaux, particularly, says he knows of patients who have had roots remaining in their mouth for as long as fifteen and twenty years.
In view of the defense that is made in this suit therefore, it is impossible for us to accept the broad statement which the Court was led to make in the Perrin case that it is negligence for a dentist to leave a root remaining in the mouth of a patient, and we have therefore to look into the facts a good bit further to find out if, in this instance, it was negligence for the defendant not to have removed the root either at the time he broke the crown of the tooth or within a certain reasonable period thereafter. *Page 904 
The facts are not so very much disputed save in respect to one particular, and that is whether or not Dr. Peak told Mrs. Brashears, as she says he did, sometime in December, 1937, that he had removed the root from her jawbone, leaving her under that impression until June 23, 1939, when, according to her, he told her for the first time that it was still there. Dr. Peak strongly denies that he ever told her in December, 1937, that he had removed the root and states on the contrary that he always told her that it was still in her jawbone and that he was waiting for nature to help in releasing it from the socket so that it would be easier for him to remove. It seems somewhat reasonable, as he says, that he would not have told her that he had removed the root because it would have been so easy for someone else to disprove that fact by making an X-ray picture which would show at once that it was still there.
All the dentists seem to agree, and so does Dr. Voss and also Dr. H.W. Lee, a physician, who testified as a witness for the plaintiffs, that Dr. Peak's procedure at the time he attempted to extract the tooth, in not forcing a removal of the root after breaking the crown, was proper. They all seem to agree that there would be some danger in probing and cutting around the jawbone at that time, probably causing permanent injury to some important nerves, and that the usual and best method to follow was to let nature help out. That in due time the root would naturally come closer to the surface of the gum, thus making the operative procedure much easier and far less dangerous. The important thing to watch, as we understand, and the one on which there seems to be some disagreement in the procedure followed by the defendant, is for the development of any infection on or about the root, and upon the appearance of such infection to proceed at once to remove it.
Dr. Peak is very positive in his testimony that he saw no signs of infection or any other trouble. Mrs. Brashears' testimony on the other hand is that she suffered almost constantly at the area where the root remained in her gum and that she always complained to him on her numerous visits to his office. On these occasions Dr. Peak testified that he would remove her plate and adjust it, filing the surface at the particular point where she complained of pain, in order to give relief, as he felt satisfied that it was because of the pressure at that point caused by the root coming higher up near the surface of the gum that she had this pain. Apparently she got relief because she only returned to his office at intervals of several weeks. She says she had to come back maybe ten or twelve times. He says that he does not think it was that often and that according to his recollection she returned about the usual number of times for the normal adjustment of her plate.
In view of the testimony of some of the dentists, that in a further effort to determine if there was any infection, they most probably would have taken X-rays before the time defendant says he did, there may be reason for criticism on this point. Dr. Peak says that he felt sure, however, that the X-ray would not have revealed more than he was able to observe by an examination of the gum itself. It was not until some time about the middle of June, 1939, that he detected signs of pus infection on the surface of the gum. He then took an X-ray which disclosed signs of pus also and he thought it advisable then to attempt to remove the root. The first attempt in which he administered gas was unsuccessful. He then tried an injection of novocaine as a local anaesthesia but because of the type of patient Mrs. Brashears was, he did not succeed with that. He suggested to her that the operation could be performed by blocking the nerve, a procedure which he did not use, but offered to call in a dentist experienced in that technique, but apparently she declined. The next he heard about the case was after the root had been removed by Dr. Voss at the Baton Rouge General Hospital. In speaking of the condition he found, Dr. Voss says that the gums were red and inflamed, there was a small amount of pus and a little proud flesh that was sticking on the end of the root. Except for the little proud flesh, the condition he saw was the same as Dr. Peak had observed some two weeks before, at which time he attempted to remove the root of the tooth by his own method and failing in that offered to call in some other dentist who would remove it by means of some other technique. Under the facts we do not think that we would be warranted in holding that an earlier use of the X-ray by Dr. Peak would have produced a different result. On the other hand, had Mrs. Brashears submitted to the method of *Page 905 
operation he suggested, very probably all the pain and trouble she complains of and the necessity of having had to go to the hospital to have the root of her tooth removed would have been avoided.
From a careful consideration of all the testimony we conclude that plaintiffs have failed to overcome the presumption which the law creates in favor of professional men such as doctors of medicine and dentists, to the effect that they have done their duty. The burden was on them to prove the want of reasonable or ordinary care or skill on the part of the defendant and this they have not done.
The judgment appealed from is correct, and it is therefore affirmed at the costs of the plaintiffs, appellants herein.