# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 15-558 consolidated with 15-559


MONA LEBLANC

VERSUS

WAL-MART STORES, INC., ET AL.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 10-11529 C/W 13-05970
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

## JOHN E. CONERY
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.


**AFFIRMED.**

**Keith J. Landry**
**Allen & Gooch**
**Post Office Box 81129**
**Lafayette, Louisiana 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Wal-Mart Stores, Inc.**

**Miachel B. Miller**
**Jacqueline B. Manecke**
**Post Office Box 1630**
**Crowley, Louisiana 70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Mona LeBlanc**

**Tammy Parker Pratt**
**Ottinger Hebert, L.L.C.**
**Post Office Drawer 52606**
**Lafayette, Louisiana 70505-2606**
**(337) 232-2606**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Lafayette City-Parish Consolidated Government**

**CONERY, Judge.**

The employer, Wal-Mart Stores Inc./Wal-Mart Distribution Center (Wal-Mart), appeals from a judgment rendered by the workers' compensation judge (WCJ) in favor of its employee, Mona LeBlanc, retroactively awarding her temporary total weekly workers' compensation indemnity benefits (TTD benefits). The WCJ found that the injuries to Ms. LeBlanc's neck and back were causally related to her work-related accident and awarded Ms. Leblanc TTD benefits, plus payment of medical benefits to Ms. LeBlanc retroactive to the date of injury, with reimbursement to her former employer, the Lafayette City-Parish Consolidated Government (LCG), for the medical benefits paid on her behalf pursuant to a group health plan covering Ms. LeBlanc. Penalties and attorney fees were also awarded to Ms. LeBlanc. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

The parties stipulated that the November 2, 2010 accident, wherein Ms. LeBlanc was checking the seal on an eighteen wheeler when the truck suddenly backed up striking the left side of her body and her left knee, occurred in the course and scope of her employment with Wal-Mart. Ms. LeBlanc filed a disputed claim for compensation on December 15, 2010, alleging she was entitled to both TTD benefits and medical benefits, in addition to penalties and attorney fees. At the trial held on October 17, 2011, the main issue before the WCJ was the causal link between the accident and Ms. LeBlanc's claimed injuries to her neck and back, and, if linked, Wal-Mart's responsibility to pay TTD benefits, the amount of those benefits, unpaid medical costs, penalties, and attorney fees.

Wal-Mart contends and Ms. LeBlanc does not dispute that at the time of the accident, Ms. LeBlanc only mentioned that the truck had injured her left knee and

shoulder. Her original statement right after the accident is consistent with her co-worker's stipulated testimony that at the time of the accident, Ms. LeBlanc only mentioned her left knee and shoulder. However, the Employer Report of Injury Form, filled out by a Wal-Mart employee three days later on November 5, 2010, stated Ms. LeBlanc's injury was a "sprain/multiple body parts."

Ms. LeBlanc explained that she began to experience back pain and soreness in multiple parts of her body in the days that followed the November 2, 2010, accident. The Associate Statement signed by Ms. LeBlanc on November 5, 2010, stated she had "swelling and ache," and in response to a question about physical signs of injury, she responded, "yes, swelling (knot)."

Ms. LeBlanc saw Dr. Kevin Guillory, Wal-Mart's company physician, on November 5, 2010. Dr. Guillory's report, under the heading "Subjective," indicated that Ms. LeBlanc presented with the following complaints, "pain in left shoulder, stiffness in joints, joint swelling, pain in left knee, slight back pain, tingling in left foot, slight headache and pain in left elbow." Dr. Guillory's records indicated, "the major pain is to the left knee. Pain is localized to the top of left knee (+) pain in left shoulder, pain in left knee, pain in left elbow, tingling in left foot, joint stiffness, joint swelling, and thoracic back, head." Dr. Guillory addressed only the injury to her left knee and referred Ms. LeBlanc to the laboratory for mandatory employee drug testing. He diagnosed a left knee sprain, took x-rays of the left knee, and prescribed ibuprofen. Apparently, Wal-Mart had only approved treatment for Ms. LeBlanc's left knee. Dr. Guillory released her to return to work with "modified duty."

On November 8, 2010, Ms. LeBlanc was still experiencing considerable pain in multiple body parts and scheduled an appointment with Dr. Keith Mack at the

2

Metropolitan Health Clinic arranged by her attorney. Ms. LeBlanc complained of pain in her back, between the shoulder blades, and in her lower back. She also complained of pain in the left shoulder, left knee, and her ribs. Dr. Mack related Ms. LeBlanc's injuries to her November 2, 2010 work accident. On further examination of Ms. LeBlanc, Dr. Mack stated in his report, "There is left chest wall tenderness. No swelling, bruising, or crepitus is noted." With respect to her back, he stated, "Forward flexion to approximately 90 degrees induces pain. There is tenderness in the thoracic paraspinous musculature bilaterally, no spasm." Dr. Mack prescribed pain medication for Ms. LeBlanc and ordered physical medicine treatments three times a week for four weeks for her chest, back, left shoulder, thoracic spine, and left knee. As of November 8, 2010, Dr. Mack restricted Ms. LeBlanc from any work at Wal-Mart. There was no noticeable change in Ms. LeBlanc's November 22, 2010 follow-up appointment with Dr. Mack, and he continued her on a "no work" status.

At her December 17, 2010 appointment with Dr. Mack, Ms. LeBlanc continued to complain of pain in her back between her shoulder blades and in her lower back, as well as pain in her left shoulder and left knee. Dr. Mack related the following positive findings: "The back has limited and painful range of motion. There is tenderness and spasm in the paraspinous musculature in the thoracolumbar region. . . . tenderness in the posterior trapezius musculature and extending inferiorly along the left shoulder blade. . . . tenderness just superior to the patella." Dr. Mack continued her on a "no work" status.

When Ms. LeBlanc failed to improve with conservative treatment, an appointment was made for her to see Dr. Michael Heard, an orthopedic specialist, who then functioned as her treating physician through the trial date of October 17,

3

2012. At her January 25, 2011 visit with Dr. Heard, Ms. LeBlanc reported pain in her neck, left shoulder, left and right ribs, middle and low back, right and left hips, and right and left knees. Dr. Heard related Ms. LeBlanc's neck and back pain to the November 2, 2010 accident and stated, "The patient has been unable to work since November 5, 2010, and remains unable to work at this time." Dr. Heard also prescribed physical therapy, medication for pain, and further testing. In February 2011, after receiving notice of Dr. Heard's work restrictions, Wal-Mart began to pay TTD benefits to Ms. LeBlanc.

Wal-Mart sought a second medical opinion (SMO), with Dr. Randall Lea pursuant to La.R.S. 23:1121, and on March 1, 2011, Ms. LeBlanc saw Dr. Lea. Ms. LeBlanc told Dr. Lea that she had never experienced cervical or thoracolumbar discomfort prior to the time of injury. Assuming that history was correct, Dr. Lea stated, "then it is conceivable that an injury event of the sort that she describes as having occurred can result in cervical discomfort at least to some degree." With respect to Ms. LeBlanc's thoracic and lumbar complaints, Dr. Lea stated:

> [I]t may be that she had some sort of momentary and quick hyperextension moment applied in her upper thoracic region. In other words, if her history is completely true and accurate, then it is possible that she could have both thoracic and lumbar complaints as a result of the injury in question.

Dr. Lea found Ms. LeBlanc would have difficulty in returning to her former job with Wal-Mart and opined, "As she is now, she is within the SEDENTARY OCCUPATIONAL CATEGORY."

On June 13, 2011, Ms. LeBlanc saw Dr. Thomas Butand, who was appointed by the WCJ to conduct an Independent Medical Examination (IME). Dr. Butand examined Ms. LeBlanc and issued a report on October 18, 2011, wherein he was asked to address the need for additional treatment and Ms. LeBlanc's

ability to return to work. Dr. Butand was not asked to address causation, as the opinion of Dr. Lea agreed with Dr. Heard that Ms. LeBlanc's injuries were work related.

However, due to the mechanism of Ms. LeBlanc's injury, in addition to the left shoulder, Dr. Butand examined her cervical spine. During the June 13, 2011 examination, Ms. LeBlanc complained of pain on the left side of her neck and numbness or tingling in her left hand, and tightness in her left shoulder with pain on the left side of her neck. Dr. Butand's report indicated the following impression: "1. Trauma to the left anterior chest region. 2. Contusion to the left shoulder region. 3. Degenerative arthritis of the cervical spine."

Dr. Butand further opined in his June 13, 2011 Report:

> The concerning factors after examining this lady was [sic] the marked trapezius spasm she had on the left side with the tingling that she is having in her left hand. The concerns are that there may have been a brachial plexus injury, getting hit in the left side of her chest, causing her head to kick back and possibly putting a stretch injury to the brachial plexus or aggravating the degenerative process in her cervical spine.

Dr. Butand testified in his December 19, 2011 deposition that "if an 18-wheeler hits you on the left side, it's a twisting type injury. . . . so the significance of it is -- I mean, it's pretty forceful to get hit by an 18-wheeler left chest." Dr. Butand's deposition testimony also provides, "I'm assuming if an 18-wheeler hit you on the left side of your chest, you're going to rotate to the left and you could potentially traumatize the lower back, cause spasm in the neck -- in the back, et cetera." Dr. Butand also testified to the tightness in Ms. LeBlanc's neck, stating, "I've never seen that much spasm or tightness in a musculature before." He further described Ms. LeBlanc's muscle tightness as follows, "it was like a rock in her neck compared to the rest of, you know the exam."

5

In Dr. Butand's June 13, 2011 report, he discussed his cervical examination of Ms. LeBlanc and found:

> As far as range of motion, of her neck flexion, she can only go two fingerbreadths from her chin to her chest. Extension is 15 degrees. . . . As far as sensory, she has some tingling in her thumb and middle finder as well as in the ring finger and little finger. . . . She has a positive Phalen, causing increased numbness in her index finger on the left.

On June 28, 2011, Dr. Butand agreed with Dr. Lea that Ms. LeBlanc could do sedentary office work, but was restricted from warehouse work or from driving any equipment.

On September 6, 2011, Dr. Heard also cleared Ms. LeBlanc to return to work at Wal-Mart in a part-time position driving a sweeper/scrubber. After approximately two weeks on the job, Ms. LeBlanc was unable to continue to work due to increased pain in her neck and back. Her work duties required her to get on and off the machine, and frequent turning of her head to look back, all of which exacerbated her pain, as did the vibrations from operating the sweeper/scrubber. On September 20, 2011, Dr. Heard once again restricted Ms. LeBlanc from work and has not released her to return to work to date.

Ms. LeBlanc was asked to see Dr. Butand, the WCJ's IME physician, a second time. In his report following the second examination of Ms. LeBlanc on October 18, 2011, Dr. Butand once again stated Ms. LeBlanc could do sedentary office work, but was restricted from warehouse work or from driving any equipment. Ms. LeBlanc testified she was never offered sedentary office work. Wal-Mart offered no evidence that sedentary office work was offered or available to Ms. LeBlanc. On the contrary, correspondence dated July 26, 2011, from Wal-Mart's case manager confirms that although the recent report of Dr. Butand cleared

Ms. LeBlanc "to work in a sedentary duty capacity . . . the decision of the distribution center [is] that there is no sedentary duty available at this time."

The WCJ found in Ms. LeBlanc's favor and found her to be credible, despite the fact that the complaints relating to her neck and back were arguably inconsistently reported in the medical documentation admitted into evidence at the hearing. Dr. Heard clearly related Ms. LeBlanc's injuries to her work accident. Both Dr. Lea, Wal-Mart's medical expert, and Dr. Butand, the IME Doctor, opined that being struck by an 18-wheeler on the left side could have caused injuries to Ms. LeBlanc's neck and back consistent with her complaints.

Ms. LeBlanc started working for Wal-Mart in 2001, after retiring from an eighteen plus year career in law enforcement. Ms. LeBlanc began her career in law enforcement as a Communications Equipment Operator with the Louisiana State Police Troop I, and then became a police officer with the City of Lafayette Police Department. After leaving the police department, she began working for Wal-Mart ten years prior to her injuries in this case, and until the time of the accident in November 2010, Ms. LeBlanc had no problems with the physical demands of any of her jobs. She did not evidence any problems with or receive treatment for her knees, back, ribs, neck, or shoulder, and never missed time from work due to complaints involving these body parts at any time prior to her being struck by the eighteen wheeler at Wal-Mart.

Stipulated testimony of three of her co-workers submitted into the record at the trial indicated they saw Ms. LeBlanc two to three weeks after the accident, and she told them of her neck, shoulder, and back pain. All three of her co-workers stated that they observed her having problems walking, and none had ever heard of her complain about a problem with any of these areas prior to the accident.

At the close of trial, the WCJ allowed the parties to submit post-trial memoranda. In oral reasons stated on the record in August 2013, the WCJ found that Ms. LeBlanc's neck and back injuries were causally related to her November 2, 2010 work-related accident. Prior to the WCJ's signing of the judgment on February 19, 2015, Ms. LeBlanc's former employer, LCG, had filed a separate action asserting a claim for subrogation/reimbursement for medical expenses paid by LCG on behalf of Ms. LeBlanc pursuant to a group health plan.[1] On April 1, 2014, LCG's case was consolidated with Ms. LeBlanc's still pending action.[2]

The WCJ ordered Wal-Mart to pay medical bills and expenses incurred by LCG on behalf of Ms. LeBlanc as of October 17, 2012 in the amount of $1,336.93. The WCJ also reserved the right of LCG to recover from Wal-Mart any future payment of medical bills and expenses related to Ms. LeBlanc's back, neck, and shoulder injuries that might be incurred by LCG. Due to the consolidation of the two cases, the WCJ's ruling in favor of LCG was also included in the WCJ's February 19, 2015 Judgment.

In the February 19, 2015 Judgment, the WCJ ruled that Ms. LeBlanc was injured in the course and scope of her employment with Wal-Mart on November 2, 2010, which entitled her to TTD benefits in the amount of $471.52 per week beginning November 8, 2010, with credit for all workers' compensation and wages previously paid. The WCJ specifically found that the injuries to Ms. LeBlanc's neck and back were "causally related to her work accident of November 2, 2010."

---

[1] *Lafayette City-Parish Consolidated Gov. v. Wal-Mart Stores Inc./Wal-Mart-Distribution Center*, Docket No. 13-05970, Dist. 04, Office of Worker's Compensation, State of Louisiana. Ms. LeBlanc had retired from LCG, and it maintained a group health plan, which provided coverage to Ms. LeBlanc and had paid her medical expenses denied by Wal-Mart. LCG filed a claim for subrogation against Wal-Mart for recovery of these expenses.

[2] *Mona LeBlanc v. Wal-Mart Stores Inc./Wal-Mart Distribution Center*, Docket No. 10-11529, Dist.04, Office of Worker's Compensation, State of Louisiana.

As a result, the WCJ ordered Wal-Mart to reimburse Ms. LeBlanc for all "out-of-pocket payments made to Dr. Domingue and Laborde Diagnostic in the amount of $499.50." The WCJ also ordered Wal-Mart to pay "all outstanding medical bills from Dr. Keith Mack, Dr. Michael Heard, Laborde Diagnostic, and Physician's Partner related to the injuries from the accident in accordance with the Louisiana Worker's Compensation Fee Schedule."

The WCJ denied penalties and attorney fees "related to the failure to approve treatment for MONA LEBLANC'S neck and low back." The denial of penalties and attorney fees was based on the WCJ's finding that Wal-Mart "reasonably controverted the neck and back treatment." The WCJ, however, awarded $8,000.00 in penalties and attorney fees "for actions or inactions that were not related to the neck and back dispute," which included Wal-Mart's "miscalculation of average weekly wage, late commencement of indemnity benefits, improper payments of benefits and failure to pay the charges of Dr. Mack," and awarded attorney fees of $8,050.00, plus expenses of $1,218.00.

Wal-Mart now timely appeals the February 19, 2015 Judgment in favor of Ms. LeBlanc. Wal-Mart did not appeal the WCJ's award of reimbursement to LCG for medical expenses and benefits paid on behalf of Ms. LeBlanc. Ms. LeBlanc also did not answer the appeal to seek penalties and attorney fees denied by the WCJ for Wal-Mart's initial failure to approve treatment for her neck and low back. Likewise, there was no request for attorney fees for work done on appeal.

### ASSIGNMENTS OF ERROR

Wal-Mart raises eight issues to be addressed on appeal. The first assignment of error is related to the WCJ's finding that Ms. LeBlanc's neck and back injuries

were related to the November 2, 2010 accident. The second assignment of error concerns the alleged improper admission into evidence of a letter sent by Ms. LeBlanc's attorney to Dr. Heard that Wal-Mart contends improperly addressed the causation issue and allegedly impacts this court's standard of review. The last six assignments of error are related to the imposition of penalties and attorney fees by the WCJ against Wal-Mart.

## LAW AND DISCUSSION

### *Standard of Review*

The standard of review in a workers' compensation claim is well established and was succinctly stated in *Bracey v. City of Alexandria*, 13-16, pp. 2-3 (La. App. 3 Cir. 6/5/13), 115 So.3d 1211, 1214-15, *writ denied*, 13-1934, (La. 11/8/13), 126 So.3d 455 (quoting *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784) :

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't. of Corrections*, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

> "The determination of coverage is a subjective one in that each

case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). "[T]he manifest error standard of appellate review applies in workers compensation cases and great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Central Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied,* 04-315 (La.4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier,* 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61

### *Assignment of Error One - Causation*

In its first assignment of error, Wal-Mart claims the WCJ "improperly concluded Ms. Leblanc's neck and back complaints were causally related to the November 2, 2010 work accident." When claiming an injury under the Workers' Compensation Act, the employee bears the burden of proving by a preponderance of evidence that an accident occurred and that she suffered a disability as a result of that accident. *See Bruno v. Harbert Int'l. Inc.*, 593 So.2d 357 (La.1992). It is undisputed and was stipulated that an accident occurred while Ms. LeBlanc was in the course and scope of her employment with Wal-Mart.

The WCJ found Ms. LeBlanc suffered a disability based on the causal connection between the accident and her claimed injuries to her neck and back largely due to its determination that Ms. LeBlanc was credible. The WCJ stated, "[T]his was pretty much a straightforward credibility decision." The WCJ further stated:

> "I thought Ms. LeBlanc was very credible. She appeared to be stiff. She appeared to be in pain. She answered all of her questions as directly as possible. She did not try to avoid any questions or dance around the issues. She was a police officer for twenty years. She was a good employee. She worked hard and she had no prior injuries. The only thing"-- and this is still my handwritten note. "The only thing out of whack, so to speak, is that her complaints were all over the place." And that was problematic. However, I believe her and I believe her complaints regardless of how odd they might have been

11

and how discombobulated the reporting of the complaints might have been.

. . . .

There was an immediate mention of back pain the first time she saw the doctor, but then there wasn't another complaint of back pain for a long time. Then, I believe Mr. Landry sets out seven months for the first cervical complaint, but early on she was having numbness and tingling in her hands, and she pretty much consistently had problems with the shoulder, any of which could have been neck problems that weren't previously or at that time diagnosed. . . . I do find that she has proven by a preponderance the connexity of those complaints. There's really nothing else to explain it. I think it's as simple as that.

To summarize, the WCJ indicated that this case and the finding of causation was "ultimately a credibility determination. There's no other explanation for her problems." We agree.

This court is charged with applying the manifest error standard and in so doing must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, 617 So.2d 880 (La.1993). We have thoroughly reviewed the record and find that the WCJ made a credibility determination based on the testimony and demeanor of Ms. LeBlanc. The medical evidence and records, the stipulated testimony of her co-workers, her law enforcement career, as well as Ms. LeBlanc's testimony that the WCJ found to be credible, all support the WCJ's rulings.

All of the physicians who examined Ms. LeBlanc found the neck and back injuries were related to the November 2, 2010 accident. All of Ms. LeBlanc's employment records reflect no problems with either her neck or back prior to the accident at issue, and Wal-Mart introduced no evidence that she had any prior back or neck complaints at any time during her prior or present employment. Additionally, none of the physicians who examined Ms. LeBlanc found her to be

12

malingering or questioned her complaints of pain, and none have expressed any reason to doubt her credibility. We therefore affirm the WCJ's ruling that Ms. LeBlanc's claimed injuries to her neck and back were causally related to the accident on November 2, 2010.

***Assignment of Error Two - Counsel's Letter to Dr. Michael Heard***

Wal-Mart claims the WCJ "improperly admitted as evidence correspondence from Plaintiff s counsel to Dr. Heard that addressed issues of causation." Counsel for Ms. LeBlanc attempted to have a June 12, 2012 letter to Dr. Heard addressing causation admitted into evidence at the beginning of trial as a separate exhibit. However, the same letter was contained in Dr. Heard's certified medical records that had been previously admitted into evidence by the WCJ without objection from Wal-Mart.

Nevertheless, Wal-Mart objected to the separately introduced exhibit that was already in evidence, urging the application of *Charles v. Lake Charles Memorial Hospital*, 06-1590 (La.App. 3 Cir. 5/30/07), 959 So.2d 571, *writ denied*, 07-1607 (La. 10/26/07), 966 So.2d 581. In *Charles*, the WCJ admitted into evidence a similar letter that was submitted to a treating physician by plaintiff's counsel asking several questions, including a question addressing the issue of causation and the injured worker's back injury. A panel of this court held the WCJ committed legal error by admitting the letter into evidence, finding it was not competent evidence. In *Charles*, the court stated, "While in general the rule concerning hearsay evidence might be more relaxed in workers' compensation cases in some circumstances, the rule concerning expert medical testimony is more stringent, and it is applicable here. Thus, the letter is inadmissible." *Charles*, 959 So.2d at 576.

In this case the WCJ admitted the June 12, 2012 letter for the limited purpose of notice to Wal-Mart and stated:

> -- I wouldn't say, "Oh, look, Dr. Heard related it in his June 12th," whatever you want to call it, "therefore, it's related." But to the extent it would act as notice to you, Mr. Landry, your client, that there was a possibility or that Dr. Heard might think it's related. That's a separate issue. So I think I'm going to receive it on that very limited basis, just this notice. Although, and I'll state for the record, if it's not competent medical evidence, then it's really not competent notice.

We need not and do not reach the issue discussed in *Charles* in this case. We find that in this case the June 12, 2012 letter was already in evidence as part of the medical records of Dr. Heard, introduced without objection, and certified by his medical custodian pursuant to La.R.S. 13:3714. We further note that Dr. Heard's initial report of January 25, 2011, dictated after his first examination of Ms. LeBlanc, and well before counsel's June 12, 2012 letter asking Dr. Heard specific questions on the issue of causation, clearly indicates that Ms. LeBlanc's back and neck injuries were caused by the November 2, 2010 accident. The records of Dr. Heard from Ms. LeBlanc's initial visit of January 25, 2011, clearly state:

IMPRESSION:

1. OCCUPATIONAL INJURY ON NOVEMBER 2, 2010 WITH RESULTING:
2. RIGHT AND LEFT LOWER RIB CAGE PAIN.
3. NECK PAIN WITH LEFT RADICULITIS.
4. MID BACK PAIN.
5. LOW BACK PAIN WITH RADICULITIS.
6. LEFT SHOULDER PAIN.
7. RIGHT AND LEFT KNEE PAIN.

We find no merit in Wal-Mart's argument that the WCJ's allegedly erroneous admission of the June 12, 2012 letter from counsel somehow negates Dr. Heard's previous opinion from his first visit on the issue of causation and/or the

WCJ's basis for finding that Ms. LeBlanc's neck and back injuries were causally related to the November 2, 2010 accident.

We further decline Wal-Mart's suggestion that Dr. Heard's certified medical records should be "disregarded because they are simply not consistent, credible, or trustworthy." As reiterated in *Williams v. SIF Consultants of Louisiana, Inc.*, p. 9, 13-972 (La.App. 3 Cir. 2/26/14), 133 So. 3d 707, 715:

> The general rule is that a rule of evidence not invoked is waived, and, hence, a failure to object to evidence waives the objection to its admissibility." *Ratcliff v. Normand*, 01-1658, pp. 6-7 (La.App. 3 Cir. 6/5/02), 819 So.2d 434, 439. "To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony, and state the reasons for the objection." *LaHaye v. Allstate Ins. Co.*, 570 So.2d 460, 466 (La.App. 3 Cir.1990), *writ denied*, 575 So.2d 391 (La.1991) (citing *Pitts v. Bailes*, 551 So.2d 1363 (La.App. 3 Cir.), *writs denied*, 553 So.2d 860 (La.1989), 556 So.2d 1262 (La.1990)).

Additionally, Wal-Mart failed to lodge as required "a contemporaneous objection to the evidence" of the certified medical records of Dr. Heard or "state the reasons for the objection" at trial. *Id.* at 715. Thus, Wal-Mart has waived any objection to the admissibility of Dr. Heard's certified medical records, and there is no basis in the record to question his opinion on medical causation.

### Assignment of Errors Three and Four- Choice of Treating Physician, Medical Benefits, and Penalties and Attorney Fees.

Wal-Mart contends the WCJ erred in finding that Ms. LeBlanc did not initially choose Dr. Guillory of the Family Clinic in Opelousas, La., as her treating physician. The WCJ did not make a specific ruling on the issue of Ms. LeBlanc's choice of treating physician in either the oral reasons or in the February 19, 2015 judgment, but awarded a $2,000.00 penalty pursuant to La.R.S. 23:1201(F), plus

attorney fees for Wal-Mart's failure to timely pay the charges of Metropolitan Health/Dr. Keith Mack.

If the WCJ had found that Dr. Guillory was the "treating physician" pursuant to La.R.S. 23:1121(B), it would have been justified in refusing to pay the medical expenses of Dr. Mack. Hence, Wal-Mart seeks to reverse the trial court's ruling awarding medical benefits, penalties, and attorney fees for Wal-Mart's denial of payment for Ms. LeBlanc's treatment with Dr. Mack, claiming that Ms. LeBlanc had "chosen" the company doctor, Dr. Guillory, as her treating physician, and that Wal-Mart was not responsible for the cost of Dr. Mack's treatment of Ms. LeBlanc.

"As a general rule, where a judgment is silent with respect to any demand which was at issue in the case under the pleadings, such silence constitutes a rejection of that demand." *Green v. L & F Constr. Inc.*, 02-524, p. 4 (La. App. 3 Cir. 10/30/02), 829 So.2d 1206, 1209 (quoting *Edwards v. Daugherty*, 97-1542, p. 38 (La.App. 3 Cir. 3/10/99); 729 So.2d 1112, 1134, *writs denied*, 99-1393 and 99-1434 (La.9/17/99); 747 So.2d 1105). In ordering Wal-Mart to pay the medical expenses incurred by Ms. LeBlanc for her treatment with Dr. Mack, and awarding penalties and attorney fees for Wal-Mart's failure to timely pay Ms. LeBlanc's medical expenses to Dr. Mack, the WCJ implicitly rejected Wal-Mart's contention that Ms. LeBlanc chose Dr. Guillory as her treating physician and, consequently, was not entitled to her further treatment with Dr. Mack. We agree.

A panel of this court clearly defined the basis for an award of penalties and attorney fees in *Landry v. Furniture Center*, 05-643, p. 10 (La. App. 3 Cir. 1/11/06), 920 So.2d 304, 311, *writ denied*, 06-385 (La. 4/28/06), 927 So.2d 290:

> Under La.R.S. 23:1201(F), a claimant in a workers' compensation claim has the burden of proving his entitlement to statutory penalties

for the employer's refusal or failure to timely pay workers' compensation benefits. To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim. *Bolton v. Mike Fleming Construction,* 36,521 (La.App. 2 Cir. 12/11/02), 833 So.2d 1177. The employer must have an "articulable and objective reason to deny benefits at the time it took the action." *Authement v. Shappert Engineering,* 02-1631 (La. 2/25/03), 840 So.2d 1181, 1188.

"Whether or not the employer is cast with attorney fees and penalties is a question of fact that will not be reversed on appeal absent manifest error." *Alpizar v. Dollar General*, 13-1150, p.13 (La.App. 3 Cir. 3/5/14), 134 So.3d 99, 108 (quoting *Lambert v. Brookshire Grocery Co.*, 06-1001, p. 11 (La.App. 3 Cir. 12/20/06), 945 So.2d 918, 927).

Ms. LeBlanc testified that subsequent to the accident on November 2, 2010, she began experiencing pain in her left knee, left shoulder, back, and left rib cage area. After working a reduced shift on November 3rd and 4th, Ms. LeBlanc was told on November 5th that she must report to work or see a doctor. She initially attempted to schedule an appointment with a Dr. Duval, but was unable to schedule an appointment with him for several weeks. She then agreed to see the Wal-Mart company doctor, Dr. Guillory, as she was required to undergo the routine urinalysis testing for drugs that is required by Wal-Mart's procedures after any accident. She also stated that she was hopeful that Dr. Guillory could help alleviate her pain symptoms.

On November 5, 2010, prior to her appointment and examination by Dr. Guillory, another Wal-Mart Associate completed what is designated as, "NOTICE TO INJURED WORKERS - YOU HAVE A RIGHT TO CHOOSE YOUR OWN DOCTOR" (Notice Form), and Ms. LeBlanc signed the required form. Ms.

LeBlanc was then seen by Dr. Guillory, who x-rayed her knee, prescribed ibuprofen, sent her for mandatory drug screening, and released her to work on a restricted basis. Dr. Guillory did not conduct an examination or prescribe any treatment for Ms. LeBlanc's other complaints, limiting his exam to the left knee as only that treatment had been approved by Wal-Mart. After continuing to experience pain, Ms. LeBlanc sought the assistance of an attorney, who referred her to Dr. Keith Mack whose office is in Lafayette, La.

The Notice Form, signed by Ms. LeBlanc before her visit with Dr. Guillory, is the basis of Wal-Mart's argument that she chose Dr. Guillory as her treating physician. Ms. LeBlanc testified in her deposition that was admitted into evidence at trial that she signed the Notice Form *prior* to her appointment and subsequent treatment with Dr. Guillory. Louisiana Revised Statutes 23:1121(B)(2)(b) provides, in pertinent part:

> When the employee is specifically directed to a physician by the employer or insurer, that physician may also be deemed as the employee's choice of physician, if the employee has received written notice of his right to select one treating physician in any field or specialty, and then *chooses to select the employer's referral as his treating specialist after the initial medical examination as signified by his signature on a choice of physician form.*

(Emphasis added.)

The record clearly reflects that Ms. LeBlanc signed the Notice Form *before* her "initial medical examination" with Dr. Guillory, and not after, as required by La.R.S. 23:1121(B)(2)(b). We find that Ms. LeBlanc selected Dr. Mack as her treating physician. We therefore find Wal-Mart's assignments of error three and four to be without merit and affirm the WCJ's award of medical benefits, penalties, and attorney fees for Wal-Mart's failure to pay the charges for the medical care of Ms. LeBlanc rendered by Metropolitan Health/Dr. Keith Mack.

*Assignments of Error Five, Six, Seven, and Eight*

The WCJ also found that Ms. LeBlanc was entitled to penalties for Wal-Mart's "miscalculation of average weekly wage, late commencement of indemnity benefits and improper payments of benefits." The remaining penalties, totaling $6,000.00, were imposed pursuant to La.R.S. 23:1201(F) and are all related to Wal-Mart's late and improper payment of TTD benefits.

*Average Weekly Wage*

The WCJ found that Ms. LeBlanc was entitled to TTD benefits "in the amount of $471.52 per week beginning November 8, 2010, subject to a dollar for dollar credit for all workers' compensation benefits and wages paid." The WCJ's calculation was in conformity with the supreme court case of *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1008 (La.1989), which held that bonuses were to be included in the weekly wage calculation as "other wages" pursuant to La.R.S. 23:1021(10)(d), currently La.R.S. 23:1021(13)(d).

In *Hargrave v. State of Louisiana, Department of Transportation and Development*, 10-1044 (La. 1/19/11), 54 So.3d 1102, the supreme court held that fringe benefits were not to be separately included in the weekly wage calculation. *Hargrave*, however, clearly stated that *bonuses* were to be included. Further, as stated in the recent case of *Groover v. Lafitte's Boudoir, Inc.*, 14-926, p. 6 (La.App. 4 Cir. 3/8/15), 162 So.3d 1184, 1188-89:

> Thus, where other forms of compensation "provide a real and reasonably definite economic gain to the employee, such as bonuses, waitress tips, meals, board, lodging, laundry, or other similar services under the contract of employment," they should be considered in computing the average weekly wage. *Hargrave v. State ex rel. Dep't of Transp. & Dev.,* 10-1044, p. 10 (La.1/19/11), 54 So.3d 1102, 1107, citing Malone & Johnson, 14 *Louisiana Civil Law Treatise: Workers' Compensation Law and Practice* § 324 at 91–92 (2002). *See also Anderson v. Eckerd Corp.,* 04-1053, p. 3 (La.App. 1 Cir. 5/6/05), 915

So.2d 901, 903 ("[t]he value of bonuses, if proven, will be included in the calculation of weekly wages for the purpose of determining the compensation rate.").

The cases cited by Wal-Mart only address the inclusion of fringe benefits in the weekly wage calculation, not bonuses, which are considered "Other wages," pursuant to La.R.S. 23:1021(13)(d). *See also Daigle*, 545 So.2d 1005. Bonuses are also considered taxable income that must be included in the average wage calculation. *See Id.*; La.R.S. 23:1021(13)(f).

The WCJ correctly applied the system of calculation espoused in *Daigle* and its progeny, which employs a combination of two different calculations to arrive at the average weekly wage. First, a calculation of the hourly wage, in this case pursuant to La.R.S.23:1021(B)(a)(i), as Ms. LeBlanc was a full-time hourly employee. Second, the calculation of the bonus portion of the weekly wage calculation which includes the amount of bonuses paid in the twenty-six weeks preceding the accident at issue. *See Daigle*, 545 So.2d 1005; La.R.S. 23:1021(13)(d). We affirm the WCJ's calculations of $471.52 weekly TTD benefits as well as its award of this amount to Ms. LeBlanc retroactively "beginning November 8, 2010 subject to a dollar for dollar credit for all workers' compensation benefits and wages paid."

The record reflects that Wal-Mart, by failing to include the bonuses due to Ms. LeBlanc in her average weekly wage calculation, underpaid her TTD benefits. Wal-Mart paid Ms. LeBlanc $452.92 instead of the required $471.52. The WCJ's award of $2000.00 in penalties, pursuant to La R.S. 23:1201(F), for the underpayment of TTD benefits is affirmed.

*Monthly As Opposed To Bi-Weekly Payment of TTD Benefits*

The WCJ also awarded $2,000 in penalties pursuant to La.R.S. 23:1201(F) for Walmart's failure to pay Ms. LeBlanc's TTD benefits on a bi-weekly basis as opposed to a monthly basis, as required by La.R.S. 23:1201(A)(1), which states in pertinent part, "Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident."

The record indicates that TTD benefits were paid bi-weekly by Wal-Mart to Ms. LeBlanc from January 25, 2011 to September 11, 2011. However, beginning on October 1, 2011, Ms. LeBlanc's TTD benefits were paid by Wal-Mart on a monthly basis. Therefore we affirm the WCJ's award of $2,000.00 in penalties for Wal-Mart's improper payment of benefits as required by La.R.S. 23:1201(A)(1).

*Late Commencement of Benefits*

The WCJ awarded $2,000.00 in penalties pursuant to La.R.S. 23:1201(F) for Walmart's failure to timely begin payment of Ms. LeBlanc's TTD benefits. Dr. Guillory, Wal-Mart's company doctor who saw Ms. LeBlanc on only one occasion, released Ms. LeBlanc to return to "modified duty" on November 5, 2010. However, it is undisputed that Dr. Mack restricted Ms. LeBlanc from working on November 8, 2010. She was also restricted from work by Dr. Heard on January 25, 2011.

Based on Dr. Mack's November 8, 2010 work restriction, notice of Ms. LeBlanc's disability was sent to Wal-Mart on November 18, 2010. Additional notices of Ms. LeBlanc's disability were sent to Wal-Mart's Claims Management office on December 8, 2010 and January 14, 2011. Despite notice of Ms.

LeBlanc's disability, Wal-Mart did not begin payment of her TTD benefits until February 2011.

Wal-Mart argues its payment of TTD benefits was timely, as it began payment once Dr. Heard, Ms. LeBlanc's orthopedic specialist, restricted Ms. LeBlanc from work on January 25, 2011. Wal-Mart's initial payment of TTD benefits in February completely discounts the work restrictions imposed by Dr. Mack on November 8, 2010, which remained in force and effect. We have denied Wal-Mart's claim that Ms. LeBlanc chose Dr. Guillory as her treating physician, thus, affirming the WCJ's ruling that Wal-Mart was responsible for the payment of Ms. LeBlanc's medical bills for her treatment with Dr. Mack, and the penalties for Wal-Mart's refusal to timely pay Dr. Mack's bills. Therefore, based on the notice given to Wal-Mart on November 18, 2010 of Ms. LeBlanc's disability, we find no error in the WCJ's ruling awarding penalties pursuant to La.R.S. 23:1201(F) of $2,000.00 for untimely payment of Ms. LeBlanc's TTD benefits.

*Attorney Fees*

The WCJ awarded attorney fees in the amount of $8,050.00, which Wal-Mart also assigned as error. This court has affirmed the statutory maximum of $8,000.00 in penalties allowed pursuant to La.R.S. 23:1201(F), and we have reviewed the submission of counsel for Ms. LeBlanc containing her time sheets and the details of work done on behalf of Ms. LeBlanc. There is nothing in the record to refute the amount of attorney fees claimed, and upon review we find more than a sufficient basis to affirm the WCJ's award of attorney fees in the amount of $8.050.00 for work done on behalf of Ms. LeBlanc by her attorney. Ms. LeBlanc's attorney did not answer the appeal or otherwise request attorney fees for work done on appeal; therefore, none are awarded.

## CONCLUSION

For the forgoing reasons, we affirm the February 19, 2015 Judgment of the Office of Workers' Compensation in its entirety. All costs of this appeal are assessed against Wal-Mart Stores Inc. /Wal-Mart Distribution Center.

**AFFIRMED.**